MARTIN *v.* NEBLETT.

(*Nashville.* February 18th, 1888.)

1. VENDOR AND VENDEE. *Constructive notice. Lien.*

A vendee of land is affected with constructive notice of a lien for pur-chase-money retained in the final decree of a Court of record invest-ing his vendor with title, although the decree is not registered nor deed taken under it.

Cases cited and approved: Nelson *v.* Allen, 1 Yer., 366; Amb., 311; 2 Ch. Cas., 246.

2. SAME. *Delay excused in enforcement of lien.*

In such case, delay for over seven years to enforce the lien, explained by the lien-holder's bad health and his executor's ignorance of the claim, does not constitute such laches as will defeat its enforcement, even against the vendee of the original purchaser.

Case cited and distinguished: Whitby *v.* Armour, 4 Lea, 683.

3. STATUTE OF LIMITATIONS. *Adverse possession. What constitutes.*

Possession of land by vendees of á purchaser at chancery sale is not adverse to the lien retained in the decree to secure balance of the purchase-price due from such purchaser, until the vendees have dis-claimed, and communicated notice of their hostile attitude to the lien-holder.

Cases cited and approved: Lincoln *v.* Purcell, 2 Head, 142; Gudger *v.* Barnes, 4 Heis., 570, cited as overruling Ray *v.* Goodman, 1 Sneed, 586.

(See Code, ≀ 3463*a* (M. & V.); ≀ 2768 (T. & S.).

FROM MONTGOMERY.

Appeal from the Chancery Court of Montgomery County. GEO. E. SEAY, Ch.

Martin *v.* Neblett.

Bills to quiet title to land. Decree for complainants. Defendant appealed.

THOS. L. YANCEY for Martin.

SMITH & LURTON for Neblett.

J. W. JUDD, Sp. J. These cases are here by appeal from the Chancery Court of Montgomery County. Sufficient facts appear in the record to show that one H. H. Poston owned a lot of land lying in the suburbs of the city of Clarksville, and that he contracted to sell it to one Jerry Metcalf, who, having failed to pay the purchase-money, a bill was filed by Poston in the Chancery Court to enforce the lien for the same. Such proceedings were had as resulted in a decree, at the November Term, 1872, ordering a sale of the land upon a credit of six, twelve, and eighteen months. The sale was had, when Poston became the purchaser, which was confirmed, but, so far as appears, there was no decree divesting and vesting title.

Poston's decree against Metcalf was for $386—$290 of which had by Poston been transferred to B. O. Kesee, Defendant Neblett's testator. And at the November Term, 1873, an agreement, signed by Poston, B. O. Kesee, and one Taylor, was produced in open court, dated August 14th, 1873, whereby it was stipulated that said Taylor should become and be the purchaser of said land, and that he should become indebted to Kesee in the sum of

$290.08; that the title to the land should be divested out of the parties to the cause and vested in Taylor, the purchaser, and a lien to be retained on the land to pay the same. Thereupon, a decree was rendered, as it shows, in accordance with the request of the parties, by which the title was divested out of Poston and Metcalf and vested in Taylor, his heirs and assigns forever, "subject to a lien on the same in favor of said Kesee for the sum of $290.08, with interest thereon from the 2d day of September, 1873." The decree then directs that the Clerk shall make a deed to Taylor, or furnish him a certified copy of the decree for registration, and if a deed is made, the lien mentioned in the decree will be reserved in the same.

Kesee died in December, 1875, and Defendant Neblett soon thereafter qualified as his executor, and, August 25th, 1881, filed his bill against Taylor to enforce his lien reserved in the decree upon the balance of unpaid purchase-money of about $200. Under this bill, a decree was rendered ordering a sale, which was made, reported to the Court, and confirmed, and writs of possession ordered to put the purchasers in possession.

At this point the three complainants in this case came into Court with their bills, alleging that they and those under whom they claim had bought, each for himself, a part of this lot of land from Taylor, and had been in actual adverse possession under conveyances claiming the same for more than seven years next before the filing of Neblett's

bill, and claiming title under the statute of limitations.

The facts show that the complainants, and those under whom they claim, had claimed and held the different parcels of land for a period of time exceeding seven years before Neblett's bill was filed; that this claim was adverse and open.

Whether, during all this time, the suit of Poston against Metcalf constituted a *lis pendens* so as to affect the purchasers under Taylor with notice of the terms of the decree under which the latter bought, and whether the Defendant Neblett, as executor of Kesee, could have come into Court and taken a judgment by motion for the balance of the unpaid purchase-money in that cause, are questions which seem to us to be wholly irrelevant, since the executor himself treated the case as out of the Court by instituting a new and independent proceeding by original bill to enforce the lien. No deed was made to Taylor by the Clerk, nor was the decree registered.

Neither do the facts show any *laches* upon the part of Kesee or his executor, because the former was in bad health, and unable to look much after business from about the time the money fell due until his death, and the executor knew nothing about the existence of the lien until informed of it by his counsel at the time of the filing of the bill.

Some effort is also made to show that one or more of the complainants informed Kesee in his

Martin *v.* Neblett.

life-time of their purchases, with a view to affect him with notice of their claim and holding, but the proof falls far short of the end suggested; so that the case is narrowed down to the single question of the effect of the lien retained in the decree.

It will be observed that Kesee's executor claims his rights under this decree, and that the complainants claim also under this decree through Taylor, who gets his title thereunder; so' that the decree becomes a common source of right and title to both complainants and defendant.

Now, under the facts before recited, Did the statute of limitations run against Kesee's estate, and is the title of the complainants complete, so that they cannot be disturbed in their holding?

In the case of *Lincoln* v. *Purcell*, 2 Head, 142, it is said: "An express lien, created by contract and reserved on the face of the conveyance, is not in all respects equivalent to a mortgage, because the legal estate passes by the conveyance and vests in the purchaser. Neither is it in all respects in the nature of a vendor's lien. The latter, when the legal estate has been conveyed, exists only by implication of law, and is the mere creature of a court of equity. A lien created by contract, and reserved on the face of the conveyance, is regarded as a specific lien, forming an original, substantial charge upon the estate thus conveyed, and as affecting all persons who may subsequently come into possession of the estate

with notice, either actual or constructive, of its
existence." The case continues: "This being the
nature and effect of the lien, the presumption of
law is that the purchaser of the land upon which
the lien is reserved holds under and consistent
with the lien until the contrary is shown by him.
And the statute of limitations will not run until
he disclaim the lien and assume to hold adversely
to it with the knowledge of the party having the
lien."

It is further said that the "debt of a mortgagee
or lien of a vendor, or other lien for the pay-
ment of money, is not barred under the Act of
1819, Chapter 28, Section 2, by the mere lapse of
seven years before the filing of the bill to enforce
them. To create the bar under that section, the
possession must be, in legal contemplation, adverse."

The case of *Gudger* v. *Barnes*, 4 Heis., 570,
overruling the case of *Ray* v. *Goodman*, in 1 Sneed,
holds a like rule as that above · announced. In
the 2 Head case the lien was reserved in the deed,
which was not registered, but the facts showed
that the subsequent holder, who was relying upon
the bar of the statute, knew of the existence of
the lien in the deed of his vendor, the Court
holding expressly that if the deed had been reg-
istered in which the lien was retained, then this
would have been notice to all persons subsequently
coming into possession of the land, and therefore,
by reason of this notice, no holding could be ad-
verse until the party having the lien had actual

knowledge of such, and that it was adverse. In other words, the party relying upon adverse possession must show that he claims against the lien, and that the lien-holder had actual knowledge of his claim.

The Court likens the case to that of a trustee by express contract, who, if he intends to hold adversely to his *cestui que trust*, must disclaim the trust and notify the *cestui que trust* of such disclaimer; and then adds that this is putting the case in the most favorable point of view for the person holding against the lien.

Now, if the lien in this case had been by deed registered, then the case in 2 Head would easily be conclusive against the claim of the complainants.

This brings us to the question, What is the effect of a lien retained in a decree of a ·court of record for the payment of the purchase-money of land sold by decree of said court, as against persons holding under such a decree mediately or immediately?

We hold that it is the same as in the case of a lien retained in a registered deed. It must, in the very nature of things, be so. The decree is a public record and the fountain-head of complainants' title. It is utterly impossible for them to trace their chain of title beyond their immediate vendor without coming face to face with the lien. In the case of *Nelson* v. *Allen & Harris*, 1 Yer., 366, this point was expressly ruled. After a most learned discussion and analysis of the cases, Judge

Whyte concludes as follows: "These cases prove that a purchaser of land is bound to take notice of every deed necessary to make out his title, and if his title-deeds disclose his antagonist's title, he is affected with notice of it."

The language quoted nor the authorities relied on by the judge, do not proceed upon the idea of registration laws—for all the authorities are English —but upon independent principle.

In *Martins* v. *Joliff*, Amb. Rep., 311, it is said that "it is admitted that a man is bound to take notice of any thing necessary to make. out his title."

In *Moore* v. *Bennett*, 2 Ch. Cases, 246, it is said: "In all cases where the purchaser cannot make out a title but by a deed which leads him to another fact, the purchaser shall not be a purchaser without notice of that fact, but shall be presumed cognizant of it; for it is *crassa negligentia* if he sought not after it."

As was said, the decree in this case is the fountain-head of complainants' title. Taylor, who sold to them, got his title under this decree, and it is impossible for them to take the first step in deraignment of their title without coming in direct contact with the lien and claim of Kesee. It is true that this notice to the complainants is constructive, but it is equally as fair and open to them as if it had been by registered deed.

It follows that, if complainants had notice of Kesee's lien, then no holding could be adverse by them until they had given notice that they held

adversely to the lien, and their holding would have been adverse from that time.

Appreciating the force of this suggestion, the learned counsel for complainants attempted in his proof to establish such notice to Kesee in his life-time, but, as we have seen, the effort was a failure.

The ruling in this case is not intended to interfere with the case of *Whitby* v. *Armour,* 4 Lea, 683. In that case Judge Turney, in delivering the opinion of the Court, says that the facts show that the cause had continued in Court for six years after the sale, and a rule was made upon the parties to speed the cause, and, nothing being done, the cause was dismissed out of Court by final decree; and eight years after this, making a delay of fourteen years, a bill was filed to enforce the lien of the decree. It is true the judge, in writing the opinion, did discuss the case in the aspect of the bar of the statute of seven years, but the case was really decided upon the ground that complainants had lost their lien by their own *laches.* The opinion adds that the facts do not show that the purchase-money had not been paid.

We regard the decision in this case as in harmony with that. What the decision would be in the case of persons holding under and by independent sources of title from that in which the lien is retained we do not decide, but we are content to confine the ruling to the exact facts of this case.

The exceptions to the finding of the Referees will be sustained, the report set aside, the decree of the Court below reversed, and the bills dismissed with cost.

Judge Lurton, having been of counsel in these causes, did not participate in their decision.