# LENEAVE *v.* McDowell.

## *(Nashville.* January 5, 1892.)

1. ASSIGNMENT. *Assignor's liability upon conditional guaranty or warranty.*

 The assignor's liability under contract of assignment of a non-negotiable chose in action will be enforced by the Courts with such conditions and limitations as the parties themselves have agreed upon; and if that liability is made dependent by the contract, express or implied, of the parties; upon the exercise of due diligence on the part of the assignee in enforcing collection of the chose in action, there can be no recovery by the assignee against the assignor for any loss sustained unless such diligence is shown, or sufficient excuse for the neglect.

 Cases cited and approved: Tully *v.* Hodge, 3 Hum., 74; Cates *v.* Kittrell, 7 Heis., 609; Williams *v.* Miller, 2 Lea, 409; Jones *v.* Greenlaw, 6 Cold., 342.

2. SAME. *Same. Case in judgment.*

 McD., an attorney, having a declared lien upon his client's land for a $1,000 fee, agreed, after the client's death, with his executor and infant heirs to accept, in full satisfaction of his fee, a portion of the land and release his lien upon the remainder. It was further stipulated that proper legal steps should be taken to carry out this contract and perfect McD.'s title to this portion of the land. There was pending at date of this agreement a suit involving the title of McD.'s client or his heirs to an undivided seven-eighths of the entire tract. Complainant became owner of McD.'s interest under this contract by an assignment which transferred "all his right, title, claim, and interest in and to said land and fee," with the further stipulation that in the event the assignee failed to get the land, and should also lose all or any part of the $1,000 fee assigned, then McD. should make up the loss to the extent of $700 only. McD.'s client and his heirs lost an undivided seven-eighths of the entire land by said suit, and surrendered possession thereof. No steps were ever taken to perfect McD.'s title to the portion taken in satisfaction of his fee. Complainant, without taking any steps whatever to collect said fee, or to enforce the lien upon said land, brought suit against McD. to

recover the $700 under his said warranty. It is not shown that the client's estate is insolvent, or that the remaining one-eighth of the land is insufficient to satisfy this fee.

*Held:* The suit cannot be maintained. McD.'s guaranty was not absolute, but conditional upon the assignee's first taking all proper steps and exercising due diligence to collect the fee and save himself from loss. This fact is not proved.

3. CONDITIONAL RELEASE. *Effect of non-compliance with condition.*

McD. having released his lien upon the remainder of the land, upon consideration and condition that he should be invested with perfect title to a specified portion of the tract, the effect of a failure of this condition was to restore his lien upon his client's interest in the entire tract.

4. STATUTE OF LIMITATIONS. *Administrator's statute does not bar enforcement of liens.*

Although recovery of a debt against an estate is barred by the administrator's statute, the enforcement of a lien upon lands by which the debt is secured is not thereby barred.

Case cited and approved: Martin *v.* Neblett, 86 Tenn., 383.

---

FROM MAURY.

---

Appeal from Chancery Court of Maury County. A. J. ABERNATHY, Ch.

WEBSTER & TAYLOR and HUGHES & HATCHER for Leneave.

SOUTHALL & SMISER and W. S. FLEMING & SON for McDowell.

LURTON, J. The bill alleges the breach of a contract of "warranty and guaranty," contained in an instrument which designates the thing transferred and assigned as an interest "in said fees or land, as the case may be." This assignment is in these words: "This agreement witnesseth: Whereas, by agreement of compromise in the cause of *McDowell and Webster and Cooper et al.* v. *J. P. Brown* it was agreed that complainants in said bill should have certain therein described lands in full satisfaction of fees in said cause of *J. P. Brown* v. *H. A. Brown et al.,* the amount of fees being stipulated in said agreement, the said agreement is, by further agreeing thereto, placed in the hands of W. J. Embry. Said agreement is here referred to for description of the land and designation of amount of fees. Now, Thos. L. Porter is desirous of purchasing *the interest of E. C. McDowell in said fees or land, as the case may be.* It is therefore agreed that for the consideration of $700 said McDowell sells or assigns and conveys to Thos. L. Porter all his right, title, claim, and interest in and to said *land and fee.* In the event the Court does not confirm the sale agreed upon as per agreement in the hands of W. J. Embry, and makes any reduction in the fee therein agreed upon—that is to say, *in the event* said Porter does *not get the land therein described, and loses all or*

*any part of the amount of fee agreed upon*—the said McDowell *warrants* and *guarantees* to said Porter, to the extent of $700, to make up his proportionate part of said loss."    *    *    *

The italics are ours.  It is manifest that without we look to the paper referred to as being in the hands of W. J. Embry, no intelligent meaning can be attached to this transfer and guaranty. Unfortunately, this has been lost, and for its contents we are compelled to rely upon oral evidence. From this, as well as from other evidence competent as showing the circumstances surrounding the transaction, we gather these facts:

*First.*—E. C. McDowell, the defendant, and others were associated as counsel for John P. Brown in a suit involving the title to some 1,100 acres of land, of the value of from forty to fifty thousand dollars; that a decree was obtained recovering this land for their client, and that a lien was declared in March, 1880, upon 500 acres of this land to secure reasonable attorney's fees.

*Second.*—After this recovery a petition was filed in the same cause by certain non-resident defendants, against whom a decree *pro confesso* had been taken, seeking to re-open the case and to defend the suit upon its merits.  Pending this petition, a bill was filed by the gentlemen whose fees were thus secured against J. P. Brown to settle the amount of these fees and to enforce the lien reserved to secure same.  Pending this suit, John P. Brown died.  After his death, and while

the petition of the non-resident defendants was still pending, the agreement referred to in the assignment above set out was executed and left in possession of Embry, the executor of J. P. Brown, as a mutual depositary.

*Third.*—From the evidence relied upon as showing contents of this lost paper we find that by this paper the fees due to Mr. Brown's counsel for services rendered in original case, and to be rendered in the matter of the pending petition, were fixed at the sum of $4,000, with some interest added, and that of this sum $1,000 was due to Defendant McDowell. To pay these fees it was provided by this agreement that one hundred and thirty acres, stated by the witness to have been described in the lost paper, and being a part of the five hundred acres upon which a lien had been declared to secure these fees, should be conveyed to these solicitors in full payment of same. It being conceded, however, that the executor and representatives of John P. Brown did not have power to conclude this arrangement by a conveyance, it was therefore provided that the executor should file a bill in the Chancery Court and obtain a confirmation of this arrangement, and by decree vest title as provided. It was also stipulated that in the event the Court should decline to confirm the agreement by decree passing the title, that then a decree should be obtained ordering a sale of this particular one hundred and thirty acres, and in the latter event the creditors thus provided

for agreed to bid their full claims on this parcel in complete exoneration of the estate. As a further part of this plan, it was agreed that the lien upon the five hundred acres should be waived. This latter agreement was manifestly upon consideration that the other parts of the agreement should be carried out.

*Fourth.*—It further appears that no bill was ever filed by the executor as provided, and this plan of settlement was therefore never confirmed or perfected, and the title was never vested as contracted for. It is to be inferred—though as to this there is no direct proof—that complainants, as assignees of McDowell and his associates, went into possession of the parcel contracted for in the way above mentioned,. and remained in possession until the termination of the questions made by the non-resident defendants. The result of this petition was that the original decree was set aside and annulled as to these non-residents, and title to seven-eighths of the entire subject-matter in controversy decreed to be in these non-residents. The history of this litigation and its final result is to be found in the case of *Brown* v. *Brown et al.;* 86 Tenn., 277 *et seq.*

As a consequence of this decision, the executor and devisees of John P. Brown surrendered possession of seven-eighths of the eleven hundred acres in controversy; and in this the complainants, as assignees of McDowell and others, acquiesced, and abandoned without actual eviction their possession

of the one hundred and thirty acre tract. There being no further possibility of obtaining title to the one hundred and thirty acres, in view of this failure of the John P. Brown title, complainants filed this bill and rest their right of recovery upon the facts we have recited.

The liability of Defendant McDowell must depend upon the construction of the contract of assignment, and arises as a consequence of the legal effect of the words of warranty and guarantee therein. It is clear that the parties contemplated the possibility that title to the one hundred and thirty acres might never be confirmed. The witness who proves the contents of the last agreement concerning settlement of the fees, says that the agreement was drawn with reference to the possible results of the pending effort to re-open the decree upon which the title of the Brown estate depended. That agreement was obviously nothing more than an executory contract for the settlement of the indebtedness of the estate in land, or by the sale of a particular part of the land. To complete it the executor was required to file a bill to obtain proper decrees confirming the arrangement or decreeing a public sale. The agreement waiving or releasing the lien of those fees on five hundred acres was clearly dependent upon the ability of the executor to carry out his part of the agreement. The pendency of the non-resident litigation was doubtless the reason why he failed to file the bill he had agreed to file.

6—7 P

The failure of title made the filing of any such bill after termination of that suit useless. In this view the proposed settlement fell through, and the release of lien fell with it. The interest sold or assigned by McDowell is described as his interest "*in said fee or land as the case may be,*" and in the conveying part of the agreement he assigns and conveys "all his right, title, claim, and interest in and to said land and fee." And when we reach the covenanting part of his assignment, we find that his contract is that "in the event said Porter does not get the land therein described, and loses all or any part of the amount of fee agreed upon, the said McDowell warrants and guarantees to said Porter, to the extent of seven hundred dollars, to make up his proportionate part of such loss." From this we understand that this was but an assignment of the fee of one thousand dollars due to McDowell as agreed to be paid in the last agreement. And that if the agreement therein referred to should fail, and the assignee did not get the land, and should fail to collect the fee, or as much as seven hundred dollars of it, that to the extent of the loss the assignee should be made good. The land he has failed to get. But this very failure revived the claim against the estate for the fee due to McDowell.

The bill neither alleges, nor does the evidence show, any effort to collect this fee from the Brown estate. The Brown title to the 130 acres failed in 1887. This bill was filed in 1890.

Though nearly three years elapsed between the adjudication of the Brown title and the bringing of this suit, yet no effort seems to have been made by demand or suit to enforce this claim against the Brown estate. If it be assumed that the statute of limitations had barred a suit for the fee as a debt, yet the lien retained 'to' secure these fees on 500 acres was not barred. *Martin* v. *Neblett*, 86 Tenn., 383. While seven-eighths of this tract charged with this lien had been lost, yet it does not follow that the remaining one-eighth would not have discharged the claim assigned by McDowell. But complainants' contention is, that the obligation of the defendant is an absolute engagement to repay seven hundred dollars upon failure to get the land, and that it was not incumbent on them to take any steps to collect the fee by suit or otherwise, or to show that the fee cannot be collected. The claim or interest assigned was a non-negotiable chose in action. An assignee of even negotiable paper may so frame his assignment as to protect from liability under any circumstances. So "he may make his liability depend upon other and different conditions than those general rules which govern indorsements of negotiable paper under the law merchant." *Tully* v. *Hodge*, 3 Hum., 74. If the assignee of negotiable paper may limit or enlarge his liability according to the agreement and intent of the parties, *a fortiori* may the assignee of such a claim and contract as was the subject of this transfer; and

such an assignor may make his liability depend upon just such conditions as he may insert in his contract. The principle upon which the cases rest relating to special contracts of guarantee is that all such contracts are to be construed so as to carry out the intention of the parties, the assignor being only bound to the extent of his undertaking. *Cates* v. *Kittrell*, 7 Heis., 609; *Williams* v. *Miller*, 2 Lea, 409–414.

This guarantee must be treated as a special and limited contract, and not as an absolute engagement. It is a guarantee against loss of land *and* fee. That is to say, if the land be lost, and if as much as seven hundred dollars of the fee be not realized, then the guarantor is to make up such loss to the extent necessary to make the sum realized on the fee of one thousand dollars equal to seven hundred. It is a guarantee that he shall realize seven hundred dollars if he shall lose the land and the fee. This guarantee against a specified loss implies an obligation upon the part of the assignee to take such proper steps and use such reasonable diligence as to guard himself against loss Such an assignee ought to show that the claim has been lost without negligence. This might have been shown by proof of unsuccessful litigation, or by evidence that litigation would have been fruitless. *Jones* v. *Greenlaw*, 6 Cold., 342; 7 Heis., 609.

Complainants have not even shown a demand upon the representatives of the Brown estate, and

Leneave *v.* McDowell.

have contented themselves with evidence as to the loss of the title to seven-eighths of the land which was to have been taken in payment of the fee. They have no legal or moral right to throw this loss upon defendant when they make no showing as to any effort to protect themselves as assignees of this fee against Brown's estate.

Reverse the decree and dismiss the bill with costs.