MISS MARY LOU WHITE *v.* LAWRENCE G. O'BRYAN *et al.*

*(Nashville.* December Term, 1922.)

1. **TRUSTS.** Trust created by will held active.

A will provided that legal title of interest given to a son should be vested in another son as trustee under trust similar to that under which trustee held estate given a daughter, and the clause vesting the daughter's interest provided that the trustee hold it for her use and benefit and pay her the revenue therefrom without power in the daughter to anticipate or assign her portion of the revenue; but it should be paid her by the trustee in her own hands during her natural life. *Held,* that testatrix's intention was to incorporate, in the clause vesting property in the son, the applicable terms of the trust created for the daughter and created an active trust. *(Post, pp.* 31, 32.)

2. **TRUSTS.** Active trust created where corpus preserved for contingent remaindermen.

The mere fact that the *corpus* of a trust is to be preserved for the possible benefit of contingent remaindermen is sufficient to create an active trust. *(Post. p.* 32.)

Cases cited and approved: Henson v. Wright, 88 Tenn., 501; Jourolmon v. Massengill, 86 Tenn., 81; Porter v. Lee, 88 Tenn., 782; Vines v. Vines, 143 Tenn., 517.

3. **WILLS.** Power to appoint by will held not to enlarge life estate in trust, and create fee.

A will provided that legal title of estate given a daughter was vested in a son as trustee to hold it for her separate use and to pay her the revenue therefrom for her support without power in the daughter to anticipate such revenue, but gave the daughter power by will to appoint persons to whom trustee at her death should pay her portion of the estate. *Held,* that the power of appointment given the daughter did not enlarge her life estate into a fee. *(Post, pp.* 32, 33.)

White v. O'Bryan.

Case cited and approved:   Brien v. Robinson, 102 Tenn., 157.

4. **WILLS. Will held to create spendthrift trust.**

A will creating a trust and providing that the beneficiary should not have power to anticipate nor to assign his portion of the revenue therefrom, but that it should be paid to him by the trustee into his own hands, and not into the hands of any other person, and during the term of his natural life, *held* to create a spend thrift trust. (*Post, p.* 33.)

Cases cited and approved:   Roberts v. Stevens, 84 Me., 325; Grothe's Appeal, 135 Pa., 586; Smith v. Towers, 69 Md., 77.

5. **WILLS. Language exempting interest of beneficiary from claims of creditors not necessary to create spendthrift trust.**

To create a spendthrift trust, language specially exempting interest of the beneficiary from the claims of creditors is not necessary. (*Post, pp.* 33, 34.)

6. **TRUSTS. Chancery without jurisdiction to subject interest of beneficiary under active trust.**

If an active trust exempting the interest of the beneficiary from creditors' claims is created by deed duly registered, or will duly recorded, chancery has no jurisdiction to subject the interest of the beneficiary thereunder. (*Post, pp.* 33, 34.)

Cases cited and approved:   Porter v. Lee, 88 Tenn., 782; Henson v Wright, 88 Tenn., 501.

7. **WILLS. Transaction settling stock on brother held to constitute gift from donors, and not to make the stock within trust created by will.**

Testatrix's will provided that the estate given a son should be vested in another as trustee and on settlement of her estate the son was charged with advancements, and a brother and sister thereafter settled on him certain shares of stock previously owned by testatrix, each contributing seventy-five shares out of the shares given them, such settlement intended to be under the same terms as set forth in testatrix's will. *Held*, that the stock so transferred was a

gift from the brother and sister, and not within the testamentary trust. (*Post, pp.* 34-42.)

Acts cited and construed:   Acts 1832, ch. 11.

Cases cited and approved:   Porter v. Lee, 88 Tenn., 782; Henson v. Wright, 88 Tenn., 501; Vines v. Vines, 143 Tenn., 517; Menken v. Brinkley, 94 Tenn., 721.

Cases cited and distinguished:   Jourolmon v. Massengill, 86 Tenn., 81; Porter v. Lee, 98 Tenn., 782; Henson v. Wright, 88 Tenn., 501. Code cited and construed: Secs. 4282-4285 (1858); Secs. 6091-6094 (S.).

8.  **TRUSTS.  Elements of trust necessary to withstand creditor's bill stated.**

In view of Shannon's Code, sections 6091-6094, relating to chancery proceedings in aid of creditors by judgment to subject property to such judgment a trust, sufficient to withstand attack of a creditor under bill in chancery, must be created by some person other than the beneficiary, must be an active trust, and must be declared by will duly recorded, or deed duly registered. (*Post, pp.* 42, 43.)

Cases cited and distinguished:   Jourolmon v. Massengill, 86 Tenn., 109; Porter v. Lee, 88 Tenn., 220.

9.  **TRUSTS.  Trust in shares of stock created by will exempt from creditor's bill.**

Where the interest of a son in his mother's estate was in shares of stock received therefrom, and her will provided that the son's interest should be vested in a third person as trustee under a spend-thrift trust, the son's shares which came directly under the will of the mother were thereby protected from attack of a creditor's bill. (*Post, p.* 43.)

10.  **TRUSTS.  Unregistered decree creating active trust not equivalent of registered deed, and ineffectual against creditors.**

An unregistered decree is not the equivalent of a registered deed, and is ineffectual as against creditors. (*Post, pp.* 43-45.)

Acts cited and construed:   Acts 1801, ch. 6, sec. 48.

White v. O'Bryan.

Cases cited and approved:   Willis v. Rust, 4 Tenn., Civ. App., 278;
   Duncan v. Gibbs, 9 Tenn., 256; Vaughn v. Vaughn, 59 Tenn., 472;
   Martin v. Neblett, 86 Tenn., 383; Bleidorn v. Pilot Mountain, etc.,
   Co., 89 Tenn., 166; Iron & Coal Co. v. Schwoon, 124 Tenn., 176.

Case cited and distinguished:   Wilkins v. McCorkle, 112 Tenn., 688.

Code cited and construed:   Sec. 4484 (1858); Sec. 6301 (S.).

11. **CREDITORS' SUIT.**   Trust created by chancery decree pursuant
to gift held insufficient as against a creditor's bill.

Where in settlement of an estate shares of stock were given by two
of the heirs to a third in trust under the same terms as the will
provided the third heir should take in shares directly given him,
such trust created by decree of chancery not being declared by
will duly recorded, or deed duly registered, was insufficient to
protect the heir's interest therein as against a creditor's bill.
(*Post, pp.* 45, 46.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—
HON. JNO. R. AUST, Chancellor.

MAJ. H. H. BARR, for appellant.

KEEBLE & SEAY, for appellees.

MR. MALONE, Special Justice, delivered the opinion of
the Court.

The bill in this cause was filed by a judgment creditor,
with *nulla bona* return, to subject the interest of the de-
fendant, Joseph B. O'Bryan, Jr., in certain property held
in trust for him.

The defense relied upon in the answer of defendants (and sustained by the chancellor) is that the trust in question was a "spendthrift trust" created by will duly recorded. Complainant's bill was accordingly dismissed, and from this decree she has appealed.

The will in question is the will of Mrs. Mary C. O'Bryan, mother of the defendant Joseph B. O'Bryan, and his interest and the interest of all other beneficiaries in that estate was heretofore fixed and determined under another proceeding brought in the chancery court at Nashville by Lawrence G. O'Bryan, the executor of said estate.

The report of the clerk and master in that case, confirmed by the chancellor, and supported by evidence (and therefore binding upon all parties to the suit, including the defendant Joseph B. O'Bryan), clearly sets forth the pertinent provisions of the will and the facts regarding a certain family settlement made between the beneficiaries. The report is as follows:

"Pursuant to a decree in the above-entitled cause, entered in Minute Book 96, page 56, the parties have taken and submitted to me the depositions of Lawrence G. O'Bryan, Mrs. Leonora 'O'Bryan Trabue, H. H. Trabue and J. B. O'Bryan from, which and from the entire record in the cause I report as follows:

"(1) *When Mary C. O'Bryan died and where.*

"Mary C. O'Bryan died in Nashville Tennessee on May 25, 1916.

"(2) *Whether she died testate or intestate and who are her heirs at law, devisees, and legatees.*

"Mrs. O'Bryan died testate leaving surviving her her children, Lawrence G. O'Bryan, Leonora O'Bryan Trabue, wife of H. H. Trabue, and J. B. O'Bryan, and her grand-

children Lawrence O'Bryan Trabue, son of Leonora O'Bryan Trabue, and Mary C. O'Bryan, daughter of J. B. O'Bryan.

"Under the terms of the will of Mrs. O'Bryan, she devised all her real estate to her executor, Lawrence G. O'Bryan, with the direction to sell such real estate, and, after the payment of taxes, etc., she devised the net proceeds to her three children, one-third to her son, Lawrence G. O'Bryan, and the remainder in equal shares to her daughter, Leonora O'Bryan Trabue, and her daughter-in-law, Mesa Rose O'Bryan, wife of J. B. O'Bryan, under certain trusts thereafter mentioned in the will. •

"She further devised and bequeathed her interest in the business of O'Bryan Bros., and to all her other property, to her said son Lawrence G. O'Bryan, of which one-third was to go to her daughter, Mrs. Trabue, for life and one-third to her son, J. B. O'Bryan, under the following trusts:

" 'The remainder of my estate I divide into three equal portions, one of which I give and bequeath to my son, Lawrence G. O'Bryan, to be his absolutely; one portion shall be for the use and benefit of my daughter, Leonora O'Bryan Trabue, for and during her natural life, upon the trusts hereinafter mentioned; and the remaining portion I give to my son Joseph B. O'Bryan, Jr., for and during his natural life upon the trusts hereinafter mentioned.

" 'The legal title of the interest in my estate given to my daughter Leonora O'Bryan Trabue, is vested in my son Lawrence G. O'Bryan as trustee, and he shall hold the same for the separate use and benefit of my daughter and shall pay to her the rents, incomes and profits, of her portion of my estate for her support and maintenance and she shall not have the power to anticipate nor the power to

assign her portion of the rents, incomes and profits but said rents, incomes and profits thereof shall be paid to her by my trustee into her own hands, and not into the hands of any other person, for and during the term of her natural life. She is given the power by last will and testament which shall be executed according to the formalities of wills and testaments devising real estate, to appoint the person or persons to whom my said trustee shall, at her death pay her portion of my estate. In the event she fails to exercise this power and leave issue surviving, her portion shall be paid to such issue *per stirpes*. But in the event she leave no issue surviving and fail to exercise this power, then her portion shall be paid to those persons who at the time of her death are my heirs at law.'

"Under item 5, it is provided:

" 'The legal title of the interest in my estate given to my son Joseph B. O'Bryan, Jr., shall be vested in my son Lawrence G. O'Bryan, as trustee under trusts in every respect similar to those under which he holds the estate given to my daughter Leonora.'

"(3) *What was the estate of Mrs. Mary C. O'Bryan at the time of her death, and from what source did she derive her estate. · What were the debts and liabilities, if any, owing by said Mrs. Mary C. O'Bryan, at the time of her death, stating the facts fully, and of what her estate now consists, and how far her estate has been administered.*

"Prior to her death Mrs. O'Bryan had sold all her real estate, and out of the proceeds paid the indebtedness which she owed the firm of O'Bryan Bros.

"Mrs. O'Bryan owned an interest in O'Bryan Bros. O'Bryan Bros., at the time of Mrs. O'Bryan's death, was a corporation, which had been formed from the partnership

of O'Bryan Bros., originally consisting of Geo. G. O'Bryan and J. B. O'Bryan, the husband of Mrs. Mary C. O'Bryan. This corporation had a capital stock of $150,000, of which seven hundred fifty shares, of the par value of $100 each, were owned and held in trust for the widow and heirs of Geo. G. O'Bryan, and of the remainder Mrs. Mary C. O'Bryan owned six hundred fifty shares, and Lawrence G. O'Bryan one hundred shares.

"Before Mrs. O'Bryan's death, she, together with Lawrence G. O'Bryan, T. B. Kennedy, and R. B. Puryear, purchased seven hundred fifty shares of the Geo. O'Bryan heirs' stock, at the price of $100,000. In addition to this consideration the Geo. O'Bryan heirs released the firm of O'Bryan Bros. from an obligation which it had theretofore entered into, to pay them the sum of $100 weekly for seven years succeeding the death of Geo. G. O'Bryan. For this $100,000 the purchasers had executed their notes, payable $5,000 every six months with interest payable weekly, and had secured the same by pledging not only all the stock purchased, but all the stock theretofore owned, by Mrs. Mary C. O'Bryan and Lawrence G. O'Bryan.

"At the death of Mrs. O'Bryan, $25,000 of this amount had been paid.

"As between the makers of these notes, Mrs. O'Bryan was obligated to pay forty seventy-fifths of the entire amount, and therefore would have acquired forty-seventy-fifths of the entire amount of the shares purchased, or four hundred shares, making her holdings in the chancery one thousand and fifty shares of the par value of $100 each, or $105,000, encumbered with the balance of the $100,000 indebtedness.

"Under an agreement with the Geo. G. O'Bryan heirs, the said Lawrence G. O'Bryan and Leonora O'Bryan Trabue have assumed and agreed to pay the balance due upon the said four hundred shares of stock which Mrs. O'Bryan's estate would be entitled to when the indebtedness should have been paid, and under this agreement the estate of Mrs. O'Bryan was released from any and all liability upon said indebtedness, accepting in lieu thereof. the liability of the said Lawrence G. O'Bryan and Mrs. Leonora O'Bryan Trabue, all of the stock, however, still remaining pledged to secure the balance of the indebtedness.

"The remainder of the estate of Mrs. O'Bryan consisted of household and kitchen furniture of the value of about $1,000, which has been divided among her children by her executor, pursuant to her will; one Packard limousine, which has been sold for the sum of $600; and the indebtedness to the estate due from J. B. O'Bryan, $29,892.50.

"The debts and charges outstanding against the estate were the amount due the Geo. O'Bryan heirs, as hereinabove stated, and the indebtedness of $6,028.19 to Lawrence G. O'Bryan.

"(4) *Whether or not the administration of said estate should be transferred to the chancery court, and whether or not the same is in condition to be administered.*

"The value of the estate·is more than $1,000 and should be transferred under the circumstances from the county court to this court, and especially in view of the proposed settlement hereinafter stated.

"(5) *Report the facts as to any proposed settlement of the estate which may have been agreed upon between the adult heirs, legatees, and devisees, and how said proposed*

*settlement affects the interest of the minor defendants and whether or not said proposed settlement should be ratified and approved, and especially whether the same is to the manifest interests of the minor defendants.*

"As hereinbefore stated, the interest of Mrs. O'Bryan in O'Bryan Bros., consisted of one thousand and fifty shares, of which she owned six hundred fifty shares at the time of her death, the remaining four hundred being the proportion of the seven hundred fifty shares purchased by her and her associates to which she would be entitled when the purchase price was paid.

"As one-fourth of the entire purchase price had been paid by her and her associates at the time of her death, this would leave one-fourth of the four hundred shares which could be treated as having been paid for by her, fully, prior to her death, leaving her owning seven hundred fifty shares of this stock, the remaining three hundred shares to go to Lawrence O'Bryan and Mrs. Trabue in equal parts, they having assumed the liability for the payment, and the liability of Mrs. O'Bryan's estate having been released by the payees of the notes.

"An agreement has been reached between Lawrence G. O'Bryan, Mrs. Trabue, and J. B. O'Bryan subject to the approval of this court, by which all the interest of the estate in this three hundred shares is released. This leaves seven hundred fifty shares, of the par value of $100 each, belonging to the estate, amounting to $75,000; the advancement or indebtedness to J. B. O'Bryan, $30,000; total, $105,000, less the indebtedness due to Lawrence G. O'Bryan, $6,000, leaving a balance of $99,000 as the net assets of the estate.

"This leaves the share of each of said children $33,000, but under the will of Mrs. O'Bryan, her children are to be charged with the advancements made by her leaving the interest of the said three children as follows:

"L. G. O'Bryan, who has agreed to accept sixty shares of stock in lieu of his indebtedness, $39,000; Leonora O'Bryan Trabue, $33,000; J. B. O'Bryan, $3,000.

"In addition to this, said Leonora O'Bryan Trabue and Lawrence G. O'Bryan have agreed, out of the love and affection which they have for their brother, Joe B. O'Bryan, to settle on him one hundred fifty shares of O'Bryan Bros. each containing seventy-five shares out of the three hundred shares to be paid for by them, making his holding one hundred eighty shares, such additional shares to be settled upon him the same terms and limitations, trusts and conditions, as the interest which he received under the will of his mother, said Mrs. Mary C. O'Bryan. This will result in the one thousand and fifty shares in O'Bryan Bros. being held as follows: L. G. O'Bryan, four hundred sixty-five shares; Leonora O'Bryan Trabue, four hundred five shares; J. B. O'Bryan, one hundred eighty shares.

"Of the four hundred five shares of Mrs. Trabue, seventy-five shares are to belong to her absolutely and the remaining three hundred thirty shares are held for her in trust as above stated.

"There of course can be no question that this proposed settlement is clearly to the interest of the minor children of J. B. O'Bryan, as the *corpus* of the fund held in trust for him and his children, instead of being thirty shares, will be one hundred eighty shares.

"While the value of the stock of O'Bryan Bros. is probably in excess of par, it is not regularly listed on the market,

and has no fixed market value, its value being largely dependent upon the management of the business by Mr. Lawrence G. O'Bryan and his present associates, and if sold on the market would probably bring much less than par.

"Mr. O'Bryan has declined to receive any compensation or commission for his services as trustee, and in view of all the circumstances I think the settlement of the indebtedness of the estate to him by the payment in stock at par is manifestly to the interest of all the legatees and devisees under the will of Mrs. O'Bryan.

"Under the proposed settlement, the children of Mrs. Trabue will receive exactly the same amount as contemplated in the will, and her share so held in trust is released as between the children of Mrs. O'Bryan from all liability.

"In view of all the circumstances, I therefore find that the proposed settlement and agreement is manifestly to the interest of all the devisees and legatees of Mrs. O'Bryan and all the minor defendants and all of the persons claiming under said will, as well those now in being, as those who may hereafter acquire an interest therein.

"Respectfully submitted,

"ROBERT VAUGHN, Clerk and Master.
"Filed December 17, 1917."

Under the facts shown in the foregoing report, it is insisted by the complainant that one hundred fifty shares of the one hundred eighty shares now held by the defendant Joseph B. O'Bryan was a settlement made upon him by his brother and sister, and not property received by him under the recorded will. It is further insisted that this trust (similar in its terms to the trust created by the will) is not evidenced by deed duly registered, or will duly recorded,

and therefore, even if its terms would otherwise establish a "spendthrift trust," is invalid against creditors for want of such registration.   In other words, it is insisted that the decree of the court confirming the above report of the clerk and master, and vesting and divesting title to the stock, in accordance with the finding set out in the clerk and master's report, is nevertheless neither a will nor a deed, has never been registered in the register's office of Davidson county, and therefore fails to satisfy the provisions of the Tennessee statute by which "spendthrift trusts" are permitted.

The chancellor was of opinion that the one hundred fifty shares did not constitute a gift to the defendant Joseph B. O'Bryan by his brother and sister, but resulted from an equalization in the settlement of the mother's estate, arising from the fact that the shares of stock were worth more than par, and he therefore held that the whole interest of the defendant Joseph B. O'Bryan—both the thirty shares and the one hundred fifty shares—came to him under the trust established by the recorded will of his mother.

Thus, after recapitulating certain facts already shown in the report of the clerk and master above set out, the chancellor says:

"But as the stock was worth more than par, the parties must have realized that Jo. B. should not be made to pay the $30,000 advancements with three hundred shares of stock, and it was likewise unfair to him to allow his sister and brother to take the three hundred shares at par when they were worth much more.

"So to settle the administration and set apart the trust estate it was agreed Jo. B. should give up his right to any part of the three hundred shares on the Geo. O'Bryan pur-

chase and in consideration of the fact that it would not really take thirty shares of his (Jo. B.'s) to pay his advancements of about that amount, therefore the full bequest of the trust in Jo. B.'s favor should be satisfied by L. G. O'Bryan, trustee, taking into his trusteeship one hundred eighty shares. This the court ratified and confirmed by its decree, declaring the one hundred eighty shares should be held upon the uses, trusts, and limitations declared in Mrs. O'Bryan's will.

"True, Mr. Lawrence O'Bryan speaks of this arrangement as a gift by him and his sisters to their brother of one hundred fifty shares. But it was not a gift; the three hundred shares he and his sister acquired comes from the Geo. O'Bryan's estate are admitted in the record by L. G. O'Bryan's testimony to be worth more than the debts owing the George O'Bryan estate, and by his evidence it also is clear that it was not necessary to appropriate three hundred of the shares bequested in trust for Jo. B. to pay his advancement of only $30,000.

"There was a consideration for the setting apart of this one hundred eighty shares to the Jo. B. O'Bryan, Jr., trust. It arose in the settlement of his mother's estate, was not a gift made to him by his brother and sister, and is declared by will duly recorded and probated."

1. Before taking up this—the determinative question in the case—certain other contentions advanced by the complainant may be briefly noticed.

(1) It is claimed that the trust is not active; that no distinct trusts are stated or pointed out in item 5 of the will, that item only providing that the trustee shall take Joseph B. O'Bryan's share "under trusts in every respect similar to those under which he holds the estate given my

daughter Leonora" in the preceding item. It is claimed that since the trust created for her daughter Leonora was a technical separate estate trust for a married woman, its language and terms could not apply to the defendant Joseph B. O'Bryan. Certain other discrepancies are pointed out, and finally it is claimed that the trust created for the daughter of testatrix is itself a dry trust.

While the language of item 5 is somewhat inartificial, we think the plain intendment is to incorporate therein the applicable terms of the trust created for the daughter of testatrix, omitting, of course, the provisions as to separate estate.

We do not think any of the complainant's objections, above enumerated, can be sustained. Apart from other considerations, the mere fact that the *corpus* is to be preserved for the possible benefit of contingent remaindermen is sufficient to create an active trust. *Henson* v. *Wright,* 88 Tenn., 501, 505, 12 S. W., 1035.

But the trust is, manifestly, active. *Jourolmon* v. *Massengill,* 86 Tenn., 81, 5 S. W., 719; *Porter* v. *Lee,* 88 Tenn., 782, 14 S. W., 218; *Vines* v. *Vines,* 143 Tenn., 517, 226 S. W., 1039.

(2) It is further contended that the power of appointment given to the beneficiary enlarges the life estate into a fee, and the case of *Brien* v. *Robinson,* 102 Tenn., 157, 171, 172, 52 S. W., 802, is relied upon to sustain this insistence. In that case the court held that the trustee was compelled to execute a conveyance whenever requested by the beneficiary, and that she might reinvest, or herself use, the proceeds of the sale. That case is therefore not in point.

In the leading case of *Jourolmon* v. *Massengill,* supra, the trust which was sustained as a "spendthrift trust" provided that the beneficiary "shall have the right to dispose of the same [the property in question] by last will and testament."

(3) It is next contended that the language of Mrs. O'Bryan's will is not sufficient to constitute a "spendthrift trust" because it does not provide that principal and income shall be free from the claims of creditors.

The applicable portions of the trust created for the daughter (incorporated by reference into the trust created for the son) are that the beneficiary "shall not have the power to anticipate nor to assign her [his] portion of the rents, incomes, and profits, but said rents, incomes, and profits thereof shall be paid to her [him] by my trustee, into her [his] own hands, and not into the hands of any other person, for and during the term of her [his] natural life."

We think this language is sufficient to constitute a "spendthrift trust." If the trustee is to pay over the income into the hands of the beneficiary, without power of alienation or anticipation on his part, this is in effect to declare the beneficiary's interest free from the claims of creditors. *Roberts* v. *Stevens,* (1892) 84 Me., 325, 24 Atl., 873, 17 L. R. A., 266; *Grothe's Appeal* (1890), 135 Pa., 586, 596, 19 Atl., 1058; *Smith* v. *Towers* (1888), 69 Md., 77, 14 Atl., 497, 15 Atl., 92, 9 Am. St. Rep., 398.

It seems, however, to be settled, under the decisions of this State, that, in a case like the present, language specially exempting the interest of the beneficiary from the claims of creditors is not necessary. If an active trust is created by deed duly registered, or will duly recorded, the

148 Tenn.—3

chancery court has no jurisdiction to subject the interest of the beneficiary thereunder. *Porter* v. *Lee,* 88 Tenn., 782, 791, 792, 14 S. W., 218; *Henson* v. *Wright,* 88 Tenn., 501, 505, 12 S. W., 1035.

II.   This brings us to the real questions in the case, viz.:

(a) Whether the trust as to the one hundred fifty shares is created by the will of Mrs. Mary C. O'Bryan, or whether it was created by a gift from the brother and sister of defendant Joseph B. O'Bryan.

(b) If created by a gift of the brother and sister, whether an unregistered decree of the chancery court, evidencing the trust, is sufficient to protect the beneficiary from the claim of a judgment creditor with *nulla bona* return.

(1) The first of these questions is a question of fact, and we are unable to concur in the finding of the chancellor.

As heretofore shown, the depositions of all parties in interest, including the deposition of the defendant Joseph B. O'Bryan, were taken, and on this evidence the clerk and master, in the former proceeding, reported that this transaction constituted a gift.   To repeat his language on this point:

"In addition to this, said Leonora O'Bryan Trabue and Lawrence G. O'Bryan have agreed, out of the love and affection which they have for their brother, Joe B. O'Bryan, to settle on him one hundred fifty shares of O'Bryan Bros. [stock], each contributing seventy-five shares out of the three hundred shares to be paid for by them, making his holding one hundred eighty shares, such additional shares to be settled upon him [on] the same terms and limitations, trusts, and conditions as the interest which he received under the will of his mother, said Mrs. Mary C. O'Bryan."

White v. O'Bryan.

This report was in all things confirmed by the chancellor, and it was, as to the above finding, abundantly supported by the evidence.

Mr. Lawrence G. O'Bryan in that case testified: "However, out of the love and affection we have for our brother J. B. O'Bryan we have agreed to a settlement upon him, under the same terms and conditions as are set forth under the will of our mother, [of] one hundred fifty shares, each of us contributing seventy-five shares. When this is done, J. B. O'Bryan will own, subject to the same conditions as are set out in the will, 180 shares. . . ."

The present defendant Joe B. O'Bryan, Jr., testifies: "Q. Mr. O'Bryan, you have read the bill in this case and heard the testimony of your brother, Lawrence G. O'Bryan. State whether or not the facts stated by him and the conclusions he reached are true and correct so far as you know. A. So far as I know they are entirely.

"Q. The statement with reference to your indebtedness and the settlement proposed is correct, is it not? A. It is."

The sister, Mrs. Leonora O'Bryan Trabue, testifies as follows:

"Q. You are familiar with the allegations in the bill which has been filed? A. Yes.

"Q. You have heard the testimony of your brother, Lawrence G. O'Bryan? A. Yes.

"Q. State whether or not the facts stated therein in the bill and in your brother's testimony are true? A. They are true."

Among the allegations of the original bill in that case, which the witnesses referred to, is the following:

"Your complainants, Leonora O'Bryan Trabue and Lawrence G. O'Bryan, have agreed, out of the love and

affection which they have for their brother, Joe B. O'Bryan, to settle on him one hundred fifty shares of the O'Bryan Bros. stock, making his holdings one hundred eighty shares, the said one hundred fifty shares to be settled upon him upon the same terms and lim:tations, trusts and conditions, as the interest which he received under the will of his mother, the said Mrs. Mary C. O'Bryan.

"Of this one hundredfifty additional shares which are to be settled upon said Joe B. O'Bryan, the said Leonora O'Bryan Trabue and Lawrence G. O'Bryan have each contributed seventy-five shares. This would leave their holdings as follows: Joe B. O'Bryan, one hundred eighty shares; Laurence G. O'Bryan, three hundred fifteen shares; Leonora O'Bryan Trabue, two hundred fifty-five shares.

"Of the three hundred shares which are yet to be received by Lawrence G. O'Bryan and Leonora O'Bryan Trabue, under their agreement with the Geo. G. O'Bryan heirs, the said Lawrence G. O'Bryan shall receive one hundred fifty shares and the said Leonora O'Bryan shall receive one hundred fifty shares, so that eventually the holding of the one thousand and fifty shares in O'Bryan Bros., Incorporated, will be as follows: Joe B. O'Bryan, one hundred eighty shares; Laurence G. O'Bryan, four hundred sixty-five shares; Leonora O'Bryan Trabue, four hundred five shares.

"The one hundred eighty shares held by Joe B. O'Bryan, as before stated, shall be settled upon him upon the same terms, limitations, trusts, and conditions as provided in the will of his mother, Mrs. Mary C. O'Bryan, so that the minor defendant Mary Chambers O'Bryan, daughter of the said Joe B. O'Bryan, will have their con-

tingent interest in this amount upon the same trusts set forth in said will."

In view of these facts and of this testimony, we are unable to concur in the plausible suggestion of the chancellor. We are not left to speculate about what the parties had in mind in the other case. The record of that case is made part of the record in this one, and shows for itself what was said and done with regard to the one hundred fifty shares settled upon the defendant J. B. O'Bryan, Jr.

We may further observe that we are unable to concur in the chancellor's conclusion that the stock was worth more than par.

The finding of the clerk and master on that subject was:

"While the value of the stock of O'Bryan Bros. is probably in excess of par, it is not regularly listed on the market, and has no fixed market value, its value being largely dependent upon the management of the business by Mr. Lawrence G. O'Bryan and his present associates, and if sold on the market would probably bring much less than par."

Speaking of the arrangement under which the defendant J. B. O'Bryan received the one hundred fifty shares, Mr. Lawrence G. O'Bryan further testified in the previous case:

"This settlement has been figured out on the basis of estimating the O'Bryan Bros. stock at par value."

In the present case, the defendants Joe B. O'Bryan, Jr., and Lawrence G. O'Bryan, so far from repudiating the proceedings in the former case, rely upon them, stating in their answer that—"the record in said case is the best evidence, and the pleadings, proof, exhibits, orders, and de-

crees of the court in said case are referred to and relied on by respondents, and respondents will demand, if necessary, that said records be produced as the best evidence of their contents."

By stipulation of counsel, the pleadings, depositions, decrees, and papers of every kind in the original case were considered as evidence in the present case, subject to exception for competency.

(2) Is the unregistered decree, vesting and divesting title, in accordance with the provisions of the will, sufficient to sustain the trust as against the bill of a judgment creditor?

The question presented by the record is primarily one of jurisdiction, viz: Can complainant maintain a bill in equity to subject the interest of the defendant Joseph B. O'Bryan, Jr., in the one hundred eighty shares?

This requires a consideration of our statutes and decisions on the subject.

(a) Prior to the act of 1832, chapter 11, hereinafter mentioned, there was a doubt as to whether a court of equity had power to subject an equitable interest. *Jourolmon* v. *Massengill,* supra.

It was in view of this doubt that certain legislation was enacted, many years ago, which appears in the Code of 1858 as sections 4282 to 4285, and in Shánnon's Compilation as sections 6091 to 6094, inclusive, reading as follows:

"6091 (4282) 5025. *Ancillary Jurisdiction.*—They have exclusive jurisdiction to aid a creditor, by judgment or decree, to subject the property of the defendant which cannot be reached by execution, to the satisfaction of the judgment or decree under the provisions of the Code.

"6092 (4283) 5026. *To Subject Trust Property; Exception.*—The creditor whose execution has been returned unsatisfied, in whole or in part, may file a bill in chancery against the defendant in the execution, and any other person or corporation, to compel the discovery of any property, including stocks, choses in action, or money due to such defendant, or held in trust for him, except when the trust has been created by, or the property so held has proceeded from, some person other than the defendant himself, and the trust is declared by will duly recorded or deed duly registered. (1832, ch. 11, sec. 1.)

"6093 (4284) 5027. *Whether Property Could be Levied on or Not.*—The court has power to compel the discovery, and to prevent the transfer, payment, or delivery of the property, and to subject the same to the satisfaction of the judgment or decree, whether such property could, if in the defendant's possession or with the title vested in him, be levied upon by execution or not. (Id., sec. 2.)

"6094 (4285) 5028. *Power to Order Bonds and Transfers.*—The court is empowered, also, to order all such bonds and other instruments to be executed by either the complainant or defendant, and all such transfers to be made as may be necessary to carry the jurisdiction into complete effect. (Id.)"

(b) Our decisions on the subject of "spendthrift trusts" have been made in the light of these statutes, and may be thus summarized:

When an active trust is created by some person other than the beneficiary, and is "declared by will duly recorded, or deed duly registered," a court of equity has no power or jurisdiction to subject the interest of the beneficiary.

The practical effect, in every such case, is to create a "spendthrift trust," so far as relief in equity is concerned, even though the instrument contains no language excluding the rights of creditors. *Porter* v. *Lee,* 88 Tenn., 782, 791, 792, 14 S. W., 218; *Henson* v. *Wright,* 88 Tenn., 501, 505, 12 S. W., 1035.

So it is that while Judge LURTON, in the leading case of *Jourolmon* v. *Massengill,* supra (1887), vindicates the general theory and policy of spendthrift trusts, and sustains by his cogent reasoning the "American rule" announced by the supreme court of the United States, as against the "English rule" which refuses to recognize such trusts, yet the actual decision of *Jourolmon* v. *Massengill,* and of all subsequent Tennessee cases, is based upon the exception contained in the above statutes. *Jourolmon* v. *Massengill,* 86 Tenn., 81, 117-128, 5 S. W., 719; *Porter* v. *Lee,* 88 Tenn., 782, 787, 789-794, 14 S. W., 218; *Henson* v. *Wright,* 88 Tenn., 501, 505, 506, 12 S. W., 1035; *Menken* v. *Brinkley,* 94 Tenn., 721, 730, 31 S. W., 92.

Thus in *Henson* v. *Wright,* supra (decided in 1899) Mr. Justice LURTON, again delivering the opinion of the court, says (arguendo) of a trust which contained no language excluding the rights of creditors, nor restraining the right of alienation:

"The trust in the case at bar was an active one, and the legal estate did not pass to the beneficial owner. The interest of the beneficiary, Hamilton, was not such a one as could have been reached by a creditor through the instrumentalities of a court of chancery. By [Secs.] 4282-4285, Code of Tennessee, the court of chancery is given jurisdiction to subject to the satisfaction of the creditor choses in action, stocks, and property held in trust for the debtor,

'except when the trust has been created or the property so held has proceeded from some person other than the debtor himself, and the trust is declared by will duly recorded or deed duly registered.' This legislative provision operated to deprive the chancery court of any jurisdiction which it might have otherwise had to subject the interest of a beneficiary under such a trust as that described. *Jourolmon* v. *Massengill*, 86 Tenn., 121."

And in the case of *Porter* v. *Lee*, supra (1890), a trust which did not by its terms attempt to restrict the beneficiary's power of alienation or exclude the rights of creditors was sustained against the bill of a judgment creditor. The court says, with reference to the basis of the decision, in *Jourolmon* v. *Massengill*:

"As we have already seen, the exception of the statute arises from the facts therein recited, and not from the restrictions which the founder of the trust may place upon the use, or the power of alienation of the trust fund by the beneficiary after payment to him by the trustee. It was so treated in that case, and the result would have been the same without the spendthrift feature of the trust as with it."

Again, in the case of *Menken* v. *Brinkley* (1895), it was said that "most of the States of the Union have followed the English rule," (94 Tenn., 729, 31 S. W., 94), and of *Jourolmon* v. *Massengill*, 94 Tenn., 730, 31 S. W., 94:

"The decision is based on the Act of 1832 (Code, section 4283; M. & V. section 5026)."

The case of *Vines* v. *Vines* (1920), 143 Tenn., 517, 226 S. W., 1039, relied upon by the defendants, is not an authority to the contrary; for in that case, though nothing is said about the statute, the trust was created by will duly re-

corded. Moreover, the rights of creditors were not involved.

We do not mean, of course, to decide that language restricting the beneficiary's power of alienation is ineffectual in so far as the beneficiary is concerned. The contrary was decided in *Vines* v. *Vines,* supra. And see *Henson* v. *Wright,* 88 Tenn., 501, 507, 12 S. W., 1035.

(c) It follows, from what has been said, that trust sufficient to withstand the attack of a creditor under bill in the chancery court must contain these elements:

First. It must be created by some person other than the beneficiary—the point specifically adjudged in *Menken* v. *Brinkley,* supra.

Second. It must be an active trust.

Third. It must be declared by will duly recorded, or deed duly registered.

(d) The reason of this last requirement is suggested by the language of Justice LURTON in *Jourolmon* v. *Massengill,* 86 Tenn., at pages 109, 110, 5 S. W., at page 728, in the opinion:

"The argument that to invest a man with apparent wealth tends to mislead creditors, and to induce them to give credit, is not tenable. Creditors have no right to rely upon property thus held, and to give him credit upon the basis of an estate which, by the very terms of the instrument creating it, is declared inalienable and not liable for his debts. To do so would be the grossest folly. By the exercise of any sort of diligence they can ascertain the nature and extent of his estate, for the policy of our registration laws would require registration of a deed creating such trust, and if it arose under a will it would necessarily be a matter of record."

White v. O'Bryan.

And in *Porter* v. *Lee* it is said, at page 794 of 88 Tenn., at page 220 of 14 S. W.:

"The policy of a statute with such an exception is a matter for the consideration of the legislature, and not for the courts. However, in defense of the statute, it may be well and truthfully remarked that a trust created by a third person is a mere gratuity, and, if declared by will duly recorded, or by deed duly registered, the creditors of the beneficiary are neither misled nor defrauded thereby."

(e) It is therefore apparent that the thirty shares which came to the defendant Joseph B. O'Bryan, Jr., directly under the will of his mother, are protected by a trust which satisfies all of the requirements above enumerated. The bill, in so far as it sought to reach the said defendant's interest in these shares, was properly dismissed.

(f) A more difficult question arises as to the one hundred fifty shares settled upon Joseph B. O'Bryan by gift of his brother and sister. For this trust is declared neither by deed nor will, and can only be sustained on the theory that an unregistered decree, creating an active trust and vesting and divesting title accordingly, is the equivalent of a registered deed.

While no reported decision of this court considers this precise contention, the question of registration, as applied to decrees, has been discussed in several cases.

In the case of *Willis* v. *Rust* (1913), 4 Tenn. Civ. App., 278, the court of civil appeals, in a learned opinion, passed upon the question whether an unrecorded decree in the chancery court, vesting and divesting title, was good as against the creditors of the party whose title has been divested.

After a full discussion, the conclusion was reached that an unregistered decree was not the equivalent of a registered deed, and was therefore ineffectual as against creditors.

By the act of 1801 (chapter 6, section 48), carried into the Code of 1858 as section 4484, and appearing as section 6301 of Shannon's Compilation relating to decrees in chancery, it is provided that:

"The decree may divest the title to property, real or personal, out of any of the parties, and vest it in others, and such decree shall have all the force and effect of a conveyance by such parties, executed in due form of law."

Such a decree is, undoubtedly, as effective as a duly acknowledged deed to transfer title. *Duncan* v. *Gibbs,* 1 Yerg., 256, 257-259; *Vaughn* v. *Vaughn,* 12 Heisk., 472, 473, 474; *Martin* v. *Neblett,* 86 Tenn., 383, 390, 7 S. W., 123; *Bleidorn* v. *Pilot Mountain, etc., Co.,* 89 Tenn., 166, 196, 204, 15 S. W., 737; *Wilkins* v. *McCorkle,* 112 Tenn., 688, 705, 706, 80 S. W., 834; *Iron & Coal Co.* v. *Schwoon,* 124 Tenn., 176, 204, 135 S. W., 785.

It is true that this court, in the case of *Wilkins* v. *Mc-Corkle,* supra, said, with regard to such decrees, at page 706 of 112 Tenn., at page 837 of 80 S. W., in the opinion:

"Such conveyances need not be recorded in the register's office, in order to be effective. Their entry upon the record books of the court in which they are rendered is sufficient, answering all the purposes of registration."

But, in that case, as shown by the opinion, the claims of creditors were not involved.

The court said, at page 706 of 112 Tenn., at page 838 of 80 S. W.:

"It results that Webb and the heirs of Howard must be considered as purchasers without notice of the prior unregistered deed of John B. Hamilton."

The contest in that case, it may be noted, was between Webb and the heirs of Howard who claimed under a decree vesting and divesting title, and Hamilton who claimed under a deed which was registered after the decree vesting and divesting title had been entered.

The language above quoted, as to the effect of a decree, related, therefore, simply to its effect as a conveyance, the holding on this point being that such a decree had the same effect with respect to conveying title that a registered deed would have had.

As shown in the quotations from *Jourolmon* v. *Massengill,* and *Porter* v. *Lee,* supra, "spendthrift trusts" are upheld and defended on the theory that no creditor can be misled or deceived, because the rights of the beneficiaries are fixed by public records, to-wit, a registered deed or a recorded will. It may be that the legislature had in mind that such a trust should always be evidenced by a public record which is easily accessible, and that a decree of court is not so easily accessible as either of the instruments mentioned in the statute. In any event, it is sufficient to say that these two instruments were in fact named in the statute, and that an unregistered decree was not included.

We are, therefore, of the opinion that the trust as to the one hundred fifty shares, created by decree of the chancery court pursuant to the gift of the defendant O'Bryan's brother and sister, not having been declared by will duly recorded, or deed duly registered, is insufficient to protect his interest against the bill of the complainant.

White v. O'Bryan.

It results that the decree of the chancellor will be modified, as above indicated, and in other respects will be affirmed.

The appellant will pay one-third, and the appellees two-thirds of the costs of this appeal.