LUTHER TRAMELL, COMPLAINANT, APPELLANT, *v.* H. K. TRAMELL, JR., ET AL., DEFENDANTS, APPELLEES.

(*Knoxville,* September Term, 1930.)

Opinion filed November 28, 1930.

Petition to re-hear denied, February 7, 1931.

2

4

JOHN H. FRANTZ and FORREST ANDREWS, for complainant, appellant.

J. H. ANDERSON and H. K. TRAMELL, JR., for defendants, appellees.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

H. K. Tramell, a resident of Campbell County, died in August, 1926. His will, executed in January, 1926, was admitted to probate. The bill in the present cause was filed by a son of H. K. Tramell, seeking a construction of the will in certain aspects, with a prayer that the testator (1) be declared to have died intestate as to all personal property not specifically mentioned in the will, and (2) that a trust created by the seventh, eleventh and twelfth items of the will be declared void as creating future estates in violation of the rule against perpetuities.

The cause was heard by the chancellor on bill, answer and stipulation of facts. The chancellor's decree sustains the bill on both aspects of the prayer, from which decree the defendants, including the testamentary trustees, the widow, and other children and grandchildren of the testa-

tor, have appealed to this court. The chancellor denied an application of the complainants to charge the fees of his solicitor against the estate, and from this part of the decree the complainant has appealed.

The will contains no general residuary clause, and we are of the opinion that the chancellor correctly held that the will makes no disposition of the personal property of the estate other than that which is specifically bequeathed. So much of the decree is accordingly affirmed.

It will be necessary to set out herein, in full, the seventh, eleventh and twelfth items of the will, dealing with the trust, and they are as follows:

"SEVENTH: The one hundred and thirty-seven shares of the par value of $100 each, all owned by me of the Clear Fork Mining Co., the title thereto shall be vested in my son Herman K. Tramell and my brother U. S. Tramell as Trustee for the purposes of managing, collecting and making distribution of the incomes therefrom, as herein provided and from all the lands or property of said Clear Fork Mining Company, after paying taxes and necessary and incidental expenses in protecting and maintaining said property the net proceeds thereof shall be divided equally between my wife Charlotte A. Tramell, my sons Herman, Luth and John Tramell and my daughter Beulah Newman, said amount to be paid to each of said parties in person, and neither of said parties shall have the right to sell, transfer or convey his or her expected or anticipated income from said shares of stock or future interest therein, and in case of the death of either of said parties then his or her income or any interest in the property of said company shall be vested in and be paid their heirs of the body, if any, and

if none then to their brothers and sisters or next of kin, with the same restrictions herein provided.

"The larger portion of the lands of said Clear Fork Mining are under lease to the Tennessee Jellico Coal Co. (lease No. 1 known as Mine 'A') dated about 1907, and lease mine 'B,' dated about 1917, and all situated at Anthras and Tacket Creek and Clear Fork, and leso (leased) to S. F. Broughton, assigned to Richardson & son on lands at Clearfield in Claiborne County, Tenn., all of which lease and amendments thereto the leased boundaries are fully described, and it is my will and directions that none of the lands described in said original leases shall be sold by said Trustees until after the expiration of the terms thereof and until after the term or period of forty years from this date, but said trustee of said stock or of the lands of said Co., for my estate, may make other mining lease and other lease of the lands of said company for income but they may and are authorized to sell and convey the valuable timber remaining on Tennessee Jellico Coal Co. Tacket Creek Mine 'B' lease as herein excluded and excepted, and make investment of the proceeds thereof in United States Bonds as hereinafter stipulated for the benefit of my wife and children and their heirs.

"It is my purpose to to place this stock and property in the hands of said trustees, and their successors, which may if necessary be selected or appointed for the purpose, and make sure of an income paid direct to each free from claims of creditors or any other persons, as held in the case of *White against O'Bryan* reported in 148 Tennessee (21 Thompson) page 18 & C.

"Provided, however, that that of the lands of said Mining Co., situate on Harican Mountain of Buffalow

and on and between Buffalow and Rose Creek and on Laurel Fork· Creek unless leased within ten (10) years may be sold and the proceeds invested also invested United States Government Bonds until needed for the purpose, along with other incomes from property of my estate or paying the annual or monthly amounts herein fixed, to be paid my wife and each hereinbefore named.

"ELEVENTH: The title in and to all of the remainder of my real estate shall be vested in my said son, Herman K. Tramell and my brother U. S. Tramell, Trustees, with the right to sell and convey the same upon written approval of my wife and our sons Luther and John, and convert the fund into general fund and invest the same in United States Government non-taxable bond,—interest bearing—the incomes from which and if necessary, the principal part thereof shall be used in making distribution between my wife and children or and their bodily heirs, and right of sale shall not exist, until after the expiration of twenty years from January 1, 1926; provided however, said trustees with said approval may and should within a reasonable time, say five years, make sale of any lots or lands with no substantial income therefrom or likely future enhanced sale, and convert the proceeds into bonds as hereinbefore provided, except the land owned by me situate at near the mouth of Tacket Creek, purchased in the interest of said Mining Company and should not be sold, but should be held in connection with said Mining Co. lands or any coal operations.

"TWELFTH: From the net incomes and from my said property and estate, I will and bequeath and direct that there be paid taking into account their said part of the net income from said Mining Co. to my wife Char-

lotte A. Tramell the sum of One Hundred and Fifty Dollars ($150) per months, and each of my children hereinbefore named, one hundred and fifty dollars per month by said Trustees or the executors of this will, payments be commenced six months after my death, said payment to my children shall be made direct to their hands and said amount shall not be sold, assigned nor shall the anticipated incomes or allowances herein be subject to interference by creditors of said parties, and on the death of either of our children, his or her share shall go to his or her heirs of the body, if any, or next of kin.

"After five years from my death said parties shall be paid from said incomes, and principal, if necessary, each the sum of two hundred ($200) dollars per month, under the conditions and restrictions provided it can be done without sacrifice or loss to the estate, until my income and my estate shall have been exhausted; provided, that at the expiration of forty years from this date, any property on hand shall be disposed of by said Trustee or their successors to be appointed by the parties then at interest and distributors (distributed), as at law and this will."

The testator was survived by his widow and by the four children named in item seven. The one hundred and thirty-seven shares of the capital stock of the Clear Fork Mining Company, a Tennessee corporation, constitute all of the capital stock of the corporation, and were all owned by the testator at the date of his death. The property of the corporation consists of coal bearing lands, located in Claiborne and Campbell Counties, and at the date of the testator's death, these lands were under lease to the Tennessee Jellico Company for a period of fifty years from 1917. The term of the leases will accordingly expire at approximately the time of the termination

of the forty year period mentioned in the seventh and twelfth items of the will. All of the income accruing to the Clear Fork Mining Company from these leases since the death of the testator has been distributed by the executors and trustees, from which the widow and each of the four children have received not less than an average of $225 per month. These facts appear in the stipulation upon which the cause was heard by the chancellor.

The chancellor filed a memorandum opinion which states his conclusion that the will manifests the intention of the testator that the trustees or their successors remain in possession and control of the *corpus* of the trust property at the end of forty years from the date of his death, provided his estate is sufficient to meet the payments provided for therein; and that "should there be any of said property at the expiration of forty years from the testator's death the same shall be distributed according to law." The chancellor, so construing the will, held the trust provisions void as an attempt to create a perpetuity.

Quoting from Gray on The Rule Against Perpetuities (3 Ed.) : "The Rule against Perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention." (Section 629.) "But there is a legitimate use of the Rule against Perpetuities in matters of construction. When the expression which a testator uses is really ambiguous, and is fairly capable of two constructions, one of which would produce a legal result, and the other a result that would be bad for remoteness, it is a fair presumption that the

testator meant to create a legal rather than an illegal interest." (Section 633.)

In this latter statement is recognized an application of the general rule that in the construction of ambiguous provisions of a will, that construction should be adopted, if reasonable, which will sustain and carry out rather than defeat the will and intention of the maker.

Before the test of the rule against perpetuities can be applied to the trust created by the will, it must be determined what estates are created thereby, their nature and duration, and the time of their vesting.

The seventh item of the will deals particularly with the shares of the capital stock of the Clear Fork Mining Company, the testator apparently contemplating the real estate owned by the corporation as if owned by himself; but the practical effect of the direction that none of the lands of the corporation be sold by the trustees during the forty years succeeding the date of the will is to restrict the trustees, as owners of the corporate stock, from assenting to such sale by the corporation.

The eleventh item of the will places within the trust all of the real estate of the testator not specifically devised by other items of the will, not here material.

The twelfth item of the will contains direction for the distribution of the income from all property included within the trust, and for the termination of the trust at the expiration of forty years from the date of the will.

The trustees are burdened with the duty of paying taxes and necessary and incidental expenses in protecting and maintaining the property. They are given the power to make leases of lands of the Clear Fork Mining Company not already under lease, and to sell timber on certain tracts, and to invest the proceeds. They

are given powers with respect to the conversion of some of the real estate covered by the eleventh item, and are charged with the duty of investing the proceeds. They are charged with the duty of paying the income from the trust "direct to the hands" of beneficiaries. There is no question, therefore, but that the trust is an active one. *Jourolmon* v. *Massengill,* 86 Tenn., 81.

Item seven, dealing particularly with the capital stock of the Clear Fork Mining Company, makes provision for the disposition of the income therefrom as follows: "after paying taxes and necessary and incidental expenses in protecting and maintaining said property the net proceeds thereof shall be divided equally between my wife Charlotte A. Tramell, my sons Herman, Luth and John Tramell, and my daughter Beulah Newman, . . . and in case of the death of either of said parties then his or her income or any interest in the property of said company shall be vested in and be paid their heirs of the body, if any, and if none then to their brothers and sisters or next of kin, with the same restrictions herein provided."

Item seven authorizes the sale of timber on certain tracts, and directs that the trustees "make investment of the proceeds thereof in United States Bonds as hereinafter stipulated for the benefit of my wife and children and their heirs."

Item eleven, vesting the title to all of the remainder of the real estate of the testator in the trustees, authorizes the sale of such real estate, upon certain conditions, and the investment of the proceeds in government bonds: "the income from which and if necessary, the principal part thereof shall be used in making distribution between my wife and children or and their bodily heirs.

By the twelfth item the testator "wills and bequeaths and directs" that there be paid to his wife and to each of his four children the sum of $150 per month, such payments to be made "from the net incomes and from my said property and estate;" the first paragraph of the item concluding: "and on the death of either of our children, his or her share shall go to his or her heirs of the body, if any, or next of kin."

Item twelve contains the direction that after five years from the date of the death of the testator "said parties shall be paid from said incomes, and principal, if necessary, each the sum of two hundred ($200) dollars per month, under the conditions and restrictions provided it can be done without sacrifice or loss to the estate, until my income and my estate shall have been exhausted."

Then follows the provision for the termination of the trust and the distribution of any remaining trust property, not consumed in making the monthly payments to the widow and children: "provided, that at the expiration of forty years from this date, any property on hand shall be disposed of by said Trustee or their successors to be appointed by the parties then at interest and distributors (distributed), as at law and this will."

In the references and quotations immediately preceding, we have omitted the provisions of the will, restraining the beneficiaries of the trust from anticipating or assigning the income, by which the intention of the testator is made clear, that the trust is of the character known as a spendthrift trust; these omissions being made for the purpose of bringing together as closely as possible the several provisions of the will creating equitable rights and interests in the trust property and its proceeds.

 The direction for the distribution of so much of the *corpus* of the trust as might be on hand at the end of the forty year period is not merely that the distribution "be made as at law," or "according to law," as held by the chancellor, but the direction of the will is that the distribution "be made as at law and this will." Giving effect to all of the language used by the testator, we think the phrase means that the distribution should be made according to the provisions of the will, as controlled by applicable rules of law. If, therefore, the fee or absolute title to the trust propety, upon the termination of the trust period, is disposed of by the will, the direction of the testator is that the distribution be made to the persons so entitled.

 The provision for the devolution of the title of the first takers to "their heirs of the body, if any, and if none then to their brothers and sisters or next of kin," contained in item seven of the will, is conditioned to take effect "in case of the death of either of said parties." The use of the phrase "in case of," which is equivalent to the phrase "in the event of," implies a death which may or may not happen; and we think the context clearly imports that the contingency in the mind of the testator is the death of his widow or any of his children within the forty year period covered by the trust.

The provision is, therefore, that the interest of the widow or of each child should vest in the heirs of his or her body in the event of death before the expiration of the trust.

The provision in item twelve, which item deals with the entire trust estate is: "and on the death of either of our children, his or her share shall go to his or her heirs of the body, if any, or next of kin." The language used

18

imports that the testator conceived the possibility of the death of some but not all of his children, having in mind a death during the continuation of the trust.

We are of opinion, therefore, that grandchildren of the testator are given an interest in the trust property only in the event of the death of their parent, child of the testator, during the trust period, and, therefore, within the period of forty years from the date of the will.

█ The will contains no limitation over, of any of the estates created, in the event of the death of a grandchild of the testator within or beyond the forty year period of the trust, subsequent to the death of the parent of such grandchild. The provision of item seven is that in case of the death of a first taker, his or her interest in the property shall be vested in the heirs of the body "with the same restrictions herein provided." This quoted phrase is clearly intended to preserve the integrity of the trust for the control of the property and the payment of income, notwithstanding the death of the widow or children of the testator, but it cannot have the effect of limiting the equitable estate devised or bequeathed to the heirs of the body of the first takers. *Davis* v. *Williams,* 85 Tenn., 651.

█ No contention is made on the briefs of any of the parties that the direction of item twelve, that each of the five named beneficiaries should be paid $150 per month, and after five years $200 per month, is a limitation of the amount of the income from the trust property which each of such parties may receive. The stipulation of facts recites that each of the parties has received monthly payments in excess of the amounts named, from which it appears that all of the parties have construed this provision of item twelve as fixing a minimum monthly sum

to be paid to each of the parties, for which encroachments may be made on the *corpus* of the trust if necessary. We think this is the correct construction of this provision of item twelve.

Considering the rights of the widow and four children of the testator separately, it therefore appears that each of them is bequeathed or devised one-fifth of the total net income from the trust property, to be paid in monthly installments during the duration of the trust, if he or she should live so long; and at the termination of the trust period, forty years from the date of the will, each of these named beneficiaries is entitled to one-fifth of the remaining *corpus* of the trust in fee. We think this result follows because it is obvious that the testator intended to dispose by his will of the entire estate in the trust property. There is no express limitation of the estate devised to the life or lives of the widow and children of the testator, as in *Winters* v. *March,* 139 Tenn., 496, if they survive the trust period. The entire legal estate is vested in the trustees for the duration of the trust, and at its termination the equitable estates of the survivors of the named beneficiaries, and of the heirs at law of those who die during the trust period, will be converted into legal estates by the falling in of the trust. *Ellis* v. *Fisher,* 35 Tenn. (3 Sneed), 231, 65 Am. Dec., 52; *Temple* v. *Ferguson,* 110 Tenn., 84.

The bequest or devise to each of the five named beneficiaries is of the rents and profits of the *corpus* of the trust, subject to the limitations of the trust for the period of its duration, and thereafter without restriction or limitation, should he or she survive the trust period.

A devise or bequest of the rents and profits of property placed under a trust is equivalent to a devise or

20

bequest of the property itself, according to the limitations in the will. *Davis* v. *Williams,* 85 Tenn., 651; *Jourolmon* v. *Massengill,* 86 Tenn., 81, 96. This principle was applied to personal property, included in a spendthrift trust, as well as to real estate, in the case last cited.

The devise to the wife and children of the testator is, therefore, a devise of the equitable estate in fee of the real estate included in the trust, and a bequest of the personal property included therein, defeasible as to any of them upon his or her death during the existence of the trust.

The bodily heirs or next of kin of any of the named beneficiaries who may die during the trust period, under the terms of the will, become vested with the equitable estate of the party so dying at the date of his or her death, the existence of the trust being no obstacle to the vesting of the equitable estate. *Eager* v. *McCoy,* 143 Tenn., 693, 705. This equitable estate will be converted into a legal estate by operation of law, at the termination of the trust period. *Ellis* v. *Fisher, supra.*

It follows that the direction of item twelve of the will for the distribution of the trust property remaining at the expiration of the forty year period confers upon the trustees no power other than to distribute such property among the named beneficiaries then living and the bodily heirs or next of kin of any of the named beneficiaries who may have previously died, in whom the equitable estate will have become vested at the date of the death of such named beneficiary. No estate is created, and none will vest, as of the date of such final distribution, or by reason thereof.

We have thus construed the will of the testator as devising and bequeathing the trust property to his

widow and children, as named beneficiaries, subject to the restrictions of a spendthrift trust for the period of forty years, with the limitation that the interest or estate of any of such named beneficiaries who may not survive the trust period will upon his or her death become vested in his or her bodily heirs or next of kin. This, we think, expresses the intention of the testator, and gives to the language of the will its legal effect.

 The will, as thus construed, creates no future estate other than that which vests upon the death of the named beneficiaries, all of whom were persons in being at the date of the testator's death. No estate is created therefore which can possibly vest in interest at any time beyond the period of a life or lives in being and twenty-one years thereafter; and the rule against perpetuities is not violated. *Eager* v. *McCoy,* 143 Tenn., 693, 702.

 It is contended for the complainant that the provision of the will extending the period of the trust for a gross term of forty years constitutes a violation of the rule against perpetuities, inasmuch as it is obvious that all persons in interest, in being at the date of the death of the testator, may die more than twenty-one years before the expiration of the forty year period.

It is pointed out in Gray on The Rule Against Perpetuities that the rule at common law was concerned only with efforts to postpone to a remote period the arising or vesting of future interests or estates, and that the analogous doctrine of the common law prohibiting the undue restraining of the right to alienate property or interests in property, is a doctrine of separate development although having originally a purpose in common with the rule against perpetuities. Gray on The Rule Against Perpetuities (3 Ed.), section 118a, et seq.

This distinction between the rule against perpetuities and the common law doctrine of the invalidity of restraints upon alienation was recognized by this court in *Eager* v. *McCoy,* 143 Tenn., 693, 703-704. In that case a devise of real estate to be held in trust for a period of twenty-five years was sustained, for the reason that all of the interests created by the will began within the limits of the rule against perpetuities, including the estate of the trustee, notwithstanding the estate of the trustee was prolonged beyond the limits of the rule against perpetuities, the court citing in support of the holding the text of Gray on The Rule Against Perpetuities and of Lewis on Perpetuities.

This holding is clearly supported by other authority, as well as by the text cited. *Boston Safe Deposit Co.* v. *Collier,* 222 Mass., 390, Ann. Cas. 1918C, 962; *Gray* v. *Whittemore,* 192 Mass., 367; *Seaver* v. *Fitzgerald,* 141 Mass., 401; *Vanderpool* v. *Loew,* 112 N. Y., 167; *Lembeck* v. *Lembeck,* 73 N. J. Eq., 427.

In *Gray* v. *Whittemore,* supra, the rule is stated: "Remainders, however, that should appear to be so limited as necessarily to vest in interest within the period limited by the rule (against perpetuities) would be valid, even though the actual payment and transfer to the beneficiary, the right to actual possession and enjoyment, might be postponed to a later period." (Citing authorities.)

So, we think the trust is not rendered invalid because of a possibility that it may extend or continue beyond the limit of the rule against perpetuities, it being sufficient to satisfy the rule that the estate of the trustees arises within the limit, and that no estate is devised or created which will arise or vest at a time which is beyond the limit of the rule.

 We deem it unnecessary to now determine the validity of the provision of item seven that none of the lands of the Clear Fork Mining Company, under lease at the date of the will, be sold by the trustees until after the expiration of the forty year period covered by the trust. The pleadings disclose no present purpose or desire of the trustees to bring about the sale of any of this land; and this prohibition against a sale is so clearly incidental to the main purpose of the trust that the estate be held intact for the use and benefit of the testator's widow and children that, if invalid, it would be disregarded and rejected without working the destruction of the trust.

 No point is made on the briefs with regard to the power of the testator to extend the restraints against the right of assignment and anticipation of income to the equitable estate which may vest during the period of the trust in the testator's grandchildren, upon the death of one of the first takers. We have, however, considered this question, finding as the only authority in point the statement of Gray: "The true doctrine is believed to be that a future estate, not in itself too remote, can be subjected to the same restraints to which a present estate can be subjected." Gray, The Rule Against Perpetuities, sections 437b, 438.

We, therefore, find that the trust created by the will is not invalid or unenforcible either because in violation of the rule against perpetuities, or because it imposes an unlawful restraint upon alienation of the estates created. That part of the decree of the chancellor which holds the contrary will be reversed.

 We concur with the chancellor that the cause is not one in which the complainant is entitled to have the

fees of his counsel paid as a part of the expenses of the administration of the estate of the deceased. The suit was filed to maintain rights asserted in opposition to the will and not under it, necessitating the employment of counsel by the executors and trustees to defend the will and the trust estate created thereunder. Inasmuch, however, as the complainant has been successful in upholding his contention that the testator died intestate as to his personal estate not specifically bequeathed, we think it a proper exercise of discretion to tax all of the costs of the cause against the executors and trustees, as a charge against the estate, and it will be so ordered.

### On Petition to Rehear.

We have endeavored to give to the complainant's petition to rehear the careful and thorough consideration to which the petition and the questions involved are entitled.

The greater part of the petition to rehear is, however, devoted to a discussion of the legal effect of a construction which counsel erroneously assume the court gave to item eleven of the will. The petition states as the premise of the argument: "The court, both in its opinion and decree, adjudges that the income from the real property devised to the trustees *is to be held intact by the trustees and not disbursed to the beneficiaries for a flat period of forty years."* (italics quoted) save only in the contingency stated in item twelve of the will.

There is no language in the opinion heretofore filed so construing item eleven. The opinion says: "Considering the rights of the widow and four children separately, it therefore appears that *each of them is bequeathed or devised one-fifth of the total net income from the trust*

*property, to be paid in monthly installments during the duration of the trust."* (Italics here.) The decree prepared by the clerk, and entered pursuant to the opinion, follows literally the language above quoted; and neither in the opinion nor decree is any distinction made between the income from the corporate stock bequeathed by item seven and the income from the real estate devised by item eleven, in so far as the time of payment to the beneficiaries of the trust is concerned.

Item eleven expressly provides that the "incomes" from the property therein devised "shall be used in making distribution between my wife and children or and their bodily heirs." We have carefully reexamined the briefs of both parties filed on the original hearing, and find in none of them any contention that this distribution of income directed by item eleven was intended by the testator to be postponed until the termination of the trust. The opinion and decree of the chancellor do not indicate that such contention was made on the hearing before him. Neither in the briefs nor in the record was any reference made to income from the real estate having accumulated in the hands of the trustees, although referred to in the petition to rehear as "conceded." Therefore, it hardly seemed necessary to expressly state in the opinion that the will contains no language sufficient to postpone the distribution of the income accruing from item eleven until the termination of the trust. In the absence of language clearly postponing such distribution, the will should not be given such construction, if to do so would work the destruction of the trust and the thwarting of the testator's primary intent, as argued in the petition.

That the beneficiaries of the trust are given a present right to the net income accruing from all the property

under the trust is the basis of the decree of the court that the equitable title to the trust property is vested in the beneficiaries.

Attacking the ruling of the court that the will vests an equitable estate in fee in the named beneficiaries, determinable as to each of them upon his or her death prior to the termination of the trust period, with remainder to the heirs of the ones so dying, the petition contends:

"The point of this petition is that neither the law of Tennessee nor of any other common-law jurisdiction knows or recognizes vested beneficial estates not subject to the claims of the creditors of the owner thereof; and that, if this be a spendthrift trust created for a period of forty years, as petitioner asserts and this Court has held, then it does not and cannot vest within the period fixed by the rule against perpetuities."

The contention that the law of this State does not recognize "vested beneficial estates not subject to the claims of creditors of the owner thereof" is hardly tenable, in the face of the statute reviewed and made the real basis of the decision of the court in *Jourolmon* v. *Massengill,* 86 Tenn., 81, and subsequent cases. Code of 1858, sections 4282-4285; Shannon's Code (all editions), sections 6091-6094; *Henson* v. *Wright,* 88 Tenn., 501; *Porter* v. *Lee,* 88 Tenn., 782; *White* v. *O'Bryan,* 148 Tenn., 18, 40-42. The exclusion of the claims of creditors of the owners of equitable estates, under trust created by will or deed of record, is effected by the statute, regardless of the restrictions stipulated by the founder or creator of the trust. *Porter* v. *Lee, supra,* pages 791-792. "If an active trust is created by deed duly registered, or will duly recorded, the chancery court has no jurisdiction to subject the interest of the beneficiary there-

under." *White* v. *O'Bryan,* 148 Tenn., 18, 33-34. The statute which effects this result does not exclude from its application equitable estates which may be absolutely vested in the beneficiary. In *Henson* v. *Wright, supra,* the beneficiary of a trust was held to take "the absolute equitable interest," to which the right of voluntary assignment and alienation attached as "incidents of ownership," notwithstanding it was not subject to his debts at the suit of creditors by virtue of the statute above cited.

Dealing more particularly with the direction of the testator that the beneficiaries of the trust created by the will shall not have the power to anticipate or assign the income from the trust, the petition contends that this characteristic of a spendthrift trust cannot prevail when the beneficiaries are given the absolute or a vested equitable interest in the trust property; and it is pointed out that in *Jourolmon* v. *Massengill, supra,* the leading Tennessee case sustaining the validity of spendthrift trusts, the beneficiary was held not to be vested with any interest in the trust property, nor in the income therefrom until paid to him by the trustee. Hence it is argued that the "spendthrift" provisions of the will of Mr. Tramell prevent the vesting of the equitable estates in the beneficiaries of the trust which we decreed on the original hearing.

In *Jourolmon* v. *Massengill,* the devise was to a trustee for the "use and benefit" of the testator's son, with a specific limitation upon the son's "use and benefit" intended to be provided for, by the additional provision: "nor is he to sell the same, nor any part thereof, but may use the rents and profits for his support and that of my wife, E. H. Massengill; but he shall have the right to dispose of the same by last will and testament." The court

held that the purpose of the testator "was to provide for the support of his son and his own widow at all events and in all contingencies." The son was given no absolute right to the income from the trust during his life, but took the limited right to use the income for the support of himself and his mother.

In the will of Mr. Tramell, there is no such limitation on the use by the beneficiaries of the income, but they are given the absolute right to demand and receive their proportionate shares from the trustees. Upon the death of one of the beneficiaries during the trust period, his administrators would clearly be entitled to demand his share of income in the hands of the trustees at the date of his death, which would not be true if the trust were only for the "support" of the beneficiaries. *Dooley v. Penland,* 156 Tenn., 284, 292.

If the restrictions against alienation by the beneficiaries and against the claims of their creditors, imposed by the will, are inconsistent with or repugnant to the absolute grant of the right to the rents and profits of the trust property, the estate of the beneficiaries would no be destroyed or limited thereby, but the restrictions would themselves be void and of no effect. Such seems to have been the uniform course of the judicial history of similar trusts, in jurisdictions not recognizing the validity of such restrictions.

This court, in *Jourolmon* v. *Massengill,* very clearly expressed the opinion that such restrictions are not repugnant to the estate granted, either when "the trust is to apply the income to the support of the *cestui que trust,* or pay the income into the hands of such beneficiary." Overruling an earlier case announcing a contrary rule, the court said:

"As to the first ground of objection stated, that the restriction is repugnant to the estate granted, we have already seen that that applies to legal estates, and does not, and in the nature of things cannot, apply where the trust is to apply the income to the support of the *cestui que trust,* or pay the income into the hands of such beneficiary. In either case the income, when it comes to the beneficiary, is his absolutely, and subject to alienation when it has thus come to his hands." (86 Tenn., 102.)

We quote again from *Jourolmon* v. *Massengill,* (86 Tenn., 104-105):

"The statement of the English Courts that power of alienation and liability to creditors are necessary incidents of ownership of property is altogether too broad, and cannot be supported. When the legal estate is vested in the owner, considerations of public policy to prevent fraud and deceit, and to facilitate the transfer of title, would operate to make the rule generally true. But it is not always true in such cases. Our exemption laws and homestead laws all relate to property, the legal title to which may be vested in the owner, and yet under such laws large masses of property are, in pursuance of a public policy, finding expression in legislation, exempt from liability for debts, and in case of the homestead, not subject to alienation by the husband alone. Public policy might, with much reason, determine that the owner of property could not impose on his own property, in his own hands, and for his own benefit, any restraint upon his own power of transfer, or the quality of non-liability to his own creditors. But where no act of the owner of the property imposes the burden or restricts the liability, but it was imposed by a vendor, testator, or donor, what rule of public policy is necessarily en-

countered in sustaining such restrictions, even when the legal estate is vested in the owner, all questions of notice out of the way?"

And referring to the case of *Broadway Bank* v. *Adams,* 133 Mass., 170, sustaining a spendthrift trust which directed payments of income to the beneficiary without limitation on his right to receive and use it, this court, with apparent approval (86 Tenn., 116), said: "This result was reached without regard to any statute, upon the general proposition that there was nothing in the nature or tenure of property, nor any principle of public policy, which prevented a donor from so giving his own that it should not be liable to the debts of his donee."

Perry on Trusts and Trustees (6 Ed.), section 386, makes the general statement: "The law does not allow property, whether legal or equitable, to be fettered by rstraints on alienation. Therefore, when an equitable interest is once vested in the *cestui que trust,* he may dispose of it, or it may pass to his assignees by operation of law, if he becomes a bankrupt." But in a note appended to this general observation by the editor, the text is thus qualified: "This statement, although generally true in the absence of restraint imposed by the creator of the trust, must be qualified by the established rule in many states, that valid restraints may be imposed upon a *cestui's* power of anticipating income or of alienating it before it is due."

So, while it is true that in the case of *Jourolmon* v. *Massengill* the will creating the trust was so worded as to withhold from the beneficiary any interest or estate in the trust property, except the power to dispose of it by will, this absence of equitable estate or interest in the beneficiary was not by the court deemed essential to the

validity of the restraints imposed by the creator of the trust, and we are of the same opinion. Since the public policy expressed in legislative mandate effects the freedom of equitable estates, under a trust created by will or deed of record, from the claims of creditors of the beneficial owners, we can perceive no reasonable basis for a judicial declaration that the donor or creator of the trust may not stipulate against the anticipation or alienation of the equitable interest by the beneficiaries. We hold therefore that the restraint upon the power of alienation, contained in the will before us, is not repugnant to the provisions which we have heretofore held vest the equitable estate in the named beneficiaries of the trust.

Learned counsel for the trustees, in their reply to the petition to rehear, acquiesce in our conclusion as to the character of estates created by the will, and the time of their vesting, but frankly express concern "as to whether or not the restrictions upon alienation can be projected beyond the period limited by the rule" (against perpetuities). But they insist that if the court should be of opinion that "the restrictions upon alienation are void in so far as they might apply to grandchildren born subsequent to the death of the testator," they should merely be so decreed without affecting other aspects or features of the trust.

We are in accord with the statement of counsel that a partial invalidity of the restraint upon alienation imposed by the testator, in the particular stated, would not affect the other provisions of the trust. Dealing with the power of a testator to impose restraints upon future estates created by his will, Gray says: "The restraint on anticipation was either good, or if it was too

remote, it should have been disregarded." Gray, Rule Against Perpetuities (3 Ed.), section 240. It follows that the determination of this question is not necessary to the decision of the issue now involved, the validity of the trust as affecting the widow and children of the testator, and we think the opinion heretofore filed should be, and it is, modified so as to leave open for future determination, if the occasion shall arise, the validity of the restraint upon alienation of the equitable estates which may vest by the terms of the will in persons unborn at the date of the testator's death. But for a discussion of this proposition reference is made to the volume of Gray, above cited, sections 240-241, 432-438.

We held in our opinion filed on the original hearing, that since the heirs of the testator's widow and children take the absolute equitable estate in fee, in the event of the death of the widow or children during the forty-year trust period, the will does not create any estate which can arise at a date later than the time of the death of the named beneficiaries, all of whom were in existence when the will was executed, and, therefore, the rule against perpetuities is not violated. And that this is true, notwithstanding the legal estate of the trustees, arising at the date of the death of the testator, may possibly continue more than twenty-one years after the death of all the interested parties in existence at the date of the death of the testator. In this holding we followed *Eager* v. *McCoy,* 143 Tenn., 693, which is well supported by authority, and we have no doubt of the soundness of that ruling. The authorities we cited in the original opinion are not referred to in the petition to rehear, and none to the contrary are cited, although the court, in *Eager* v. *McCoy,* recognized the existence in

our cases of "some chance expressions apparently inimical" to that view.

The petition argues that if the rule against perpetuities does not destroy the trust in issue, because of the provision for its continuance for the gross term of forty years, then there is no rule of law by which the prolongation of trusts can be limited, and that "Mr. Tramell could just as well have fixed in his will the period of three hundred years as forty years, in so far as the rule against perpetuities is concerned." This is true, *in so far as the rule against perpetuities is concerned,* since, as the court rule in *Eager* v. *McCoy,* the common-law authorities are uniform in holding, that the rule against perpetuities has no application to the length or continuation of estates, equitable or legal, but is concerned only with the period within which future estates may arise. 143 Tenn., 693, 703.

We are referred to *Davis* v. *Williams,* 85 Tenn., 646, 649, wherein the court said: "A devise by which property is tied up and made inalienable beyond the period within a life or lives in being and twenty-one years, with a fraction of a year added for the term of gestation in cases of posthumous birth, is void as creating a perpetuity." This language was used to support the statement immediately preceding the quotation that the will before the court would violate the rule if construed to mean "that an equitable life estate for the grandchildren follows upon an equitable life estate for the children" of the testator. This conclusion of the court was correct, but only because the vesting of the fee-simple estate, under the suggested construction of the will, would have been postponed until the death of grandchildren of the testator who may not have been in existence at the date

of his death. This is made clear in subsequent paragraphs of the opinion in that case.

But the power of a testator or vendor to create a trust of indefinite duration is effectively limited by another well settled principle of equity jurisprudence, that "trustees take exactly that quantity of interest which the purposes of the trust require." *Ellis* v. *Fisher,* 35 Tenn. (3 Sneed), 230, 65 Am. Dec., 52; *Temple* v. *Ferguson,* 110 *Tenn.,* 84, 100 A. S. R., 791; *Winters* v. *March,* 139 Tenn., 496, 502. This rule was applied in *Davis* v. *Williams, supra,* wherein it was said: "The broadness of the devise to the trustee is unimportant; for it is a familiar law that the estate of the trustee will be limited to the purposes of the trust, and will altogether cease when the trust is accomplished." A trust is therefore to be sustained as valid, or declared void, in so far as the rule against perpetuities is concerned, upon a consideration of the purposes for which the trust is created rather than the extent or duration of the legal title vested in a trustee. The legal fee-simple estate, with which trustees are usually vested under trusts created by will or deed, is always held to terminate or fall upon the fulfillment of the objects of trust, as in the cases cited, or may be terminated by decree of a court of equity, under principles discussed in *Vines* v. *Vines,* 143 Tenn., 517. And no estate for years, however long, whether vested in a trustee or in a beneficial owner, can be said to equal in duration an estate in fee simple.

The petitioner again insists that the fees of his counsel should be taxed as a part of the costs of the suit, and charged against the estate as a part of the costs of administration, contending that his action does not assail the will, but seeks only its construction, for the benefit

not only of himself, but of ''every other beneficiary thereunder.'' The purpose of petitioner's suit, and the object of his briefs filed herein, has been to destroy the trusts created by the will, and to entirely defeat the contingent remainders denied to the testator's grandchildren. If petitioner were successful, the decree would declare the intestacy of the testator in the property covered by items seven and eleven of the will, as in the decree of the chancellor. We do not perceive any justification for requiring the estate to pay the fees of petitioner's counsel, incurred in such an effort.

The modification hereinabove made of the opinion heretofore filed will not necessitate any change in the decree already entered. The petition to rehear is accordingly denied.