POLSTON et al. v. SCANDLYN et al.—108 S. W. (2d), 1104.

Eastern Section.    July 3, 1937.

Petition for Certiorari denied by Supreme Court, October 3, 1937.

D. O. Harris, of Harriman, for appellants.
J. W. Stone, of Harriman, for appellees.

PORTRUM, J. ▇ This is an ejectment suit in which the complainants seek to recover from the defendants 4½ acres of land of a value of about $800 and to enforce the recovery by a writ of possession; the chancellor's findings of fact were meager indeed; he only stated in the decree that he found the legal title was in the complainant, and upon this premise he granted a recovery. Ordinarily an ejectment suit requires a more extended finding of facts by the lower court to be of any aid to this court, and the appellees insist that the decree below should be affirmed because of the absence of a

sufficient finding of facts under the authority of Stiner v. Powells Valley Hardware Co., 168 Tenn., 99, 75 S. W. (2d), 406; but the rule laid down in this case is applicable only when the findings of the chancellor have been suppressed; when none are made, the rule is to remand the case for a finding of facts. Hicks v. Hicks, 168 Tenn., 539, 79 S. W. (2d), 802. If the appellees had made a motion to remand for a finding of facts, the court would have been inclined to grant it, but for the fact that the erroneous holding of the chancellor is apparent from the first few conveyances in the chain of title of the respective parties. The court needs no additional finding as an aid to the determination of this suit.

The parties claim through a common source, and the respective chains of title will be stated here in a consolidated form and in the order of the execution of the different instruments. Beginning with the common source:

In October, 1920, L. W. Lewis was the owner of a tract of 131 acres of land lying in Roane county, Tenn., and upon the 15th day of said month and year, he sold this boundary of land to Vernon W. Barnawell for a recited consideration of $5,000, evidenced by his promissory note of even date. nonnegotiable and due ten years from date. On the same date and as a simultaneous transaction, the grantee Barnawell, joining with his wife, executed a trust deed on the 131 acres of land to secure payment of the purchase money evidenced by the $5,000 note. One N. Giles Carter was named as trustee in the trust deed and held the legal title for the purposes of the trust. These two instruments were duly registered on the 19th day of October, 1920.

On February 24, 1921, only a few months after the execution of the above-mentioned instruments, Vernon W. Barnawell and wife, Pauline Barnawell, executed their warranty deed to S. P. Loggins, conveying 4½ acres of the 131-acre tract and covenanted that the 4½ acres was unencumbered, that they had a right to convey the same, and they possessed the legal title, the covenant being in proper form. Lawrence W. Lewis, the mortgagee who owned the $5,000 debt secured by the aforementioned trust deed, executed this instrument by signing under the signatures of the grantors. His name did not appear in the body of the deed, but he duly acknowledged the instrument on the 11th day of March, 1921, in an acknowledgment which designated him as "the bargainor." This instrument was duly registered on April 7, 1921, when the grantees under the same went into possession of the property. The property had no improvements on it and was unfenced; about one acre was in cultivation and the balance in woodland. Two acres of this woodland has been cleared and put under cultivation by the grantee S. P. Loggins, and his successors in title. Crops have been planted and harvested from the land since 1921 by the said Loggins and his successors in title, but

the land perhaps lay idle intermittently during some of the cropping seasons. Loggins owned 40-odd acres adjoining this 4½-acre tract which he consolidated into one tract, but transferred the land to his successors in title in one instrument containing separate descriptions of the two tracts. The court does not deem this possession important other than to reflect actual notice upon third parties dealing with and attempting to purchase this 4½-acre tract while it was in the actual possession of Loggins and his predecessors in title.

On April 27, 1925, Vernon W. Barnawell and wife Pauline, the mortgagors in the aforementioned trust deed, conveyed the land covered by the trust deed, the 131-acre tract they had purchased from L. W. Lewis, including the 4½ acres they had subsequently deeded to Loggins, and which they adjoined, to the said mortgagee L. W. Lewis; the recited consideration being the release of the $5,000 note held by Lewis and secured by the trust deed. This deed was registered June 11, 1925.

Thereafter, namely on December 22, 1928, Lewis and wife deeded the 131-acre tract as described in the trust deed and his first warranty deed, to C. B. Harvey, which deed was registered December 29, 1930.

C. B. Harvey and wife deeded the identical land to Lizzie Polson, John Polson, and Tasco Polson, by deed dated December 20, 1930, and registered December 5, 1932. These last-named parties are the complainants in this action suing to recover the 4½-acre tract which is in the possession of the defendants, who claim their title to the 4½-acre tract through a direct chain of title from S. P. Loggins, the original purchaser of this tract, the deed of which is above described. It is unnecessary to follow these purchases and conveyances down to the present owners, since they admittedly own whatever title Loggins acquired by the aforementioned purchase.

To recapitulate the title: Lewis sold to Barnawell October 15, 1920, for $5,000 evidenced by note, and Barnawell conveyed to Giles Carter, trustee, in trust to secure the note the land he had purchased from Lewis. Barnawell and wife conveyed 4½ acres to S. B. Loggins on February 24, 1921, by warranty deed containing covenants against encumbrances, and which instrument was signed and acknowledged by L. W. Lewis, the mortgagee, who held the lien securing $5,000 against the entire tract of 131 acres, which included the 4½ acres. He acknowledged this instrument in an acknowledgment designating him as "the bargainor." Loggins went into possession immediately. In April, 1925, Vernon W. Barnawell and wife, Pauline, conveyed their equity in the tract of land describing the entire 131 acres, to their original vendor, L. W. Lewis, who was also the mortgagee, for the surrender and release of the $5,000 note held against the property and secured by trust deed, whereafter Lewis transferred the title, or such as he had, to C. B. Harvey and he in turn conveyed to

the complainants in this cause. In the meantime, Loggins, the purchaser of the 4½ acres, had transferred his title to pass by mesne conveyances to the defendants in this cause.

The chancellor was of the opinion that since L. W. Lewis was not named as a grantor in the deed by which Vernon W. Barnawell and wife transferred the title to S. P. Loggins that no interest passed out of Lewis by reason of any jointure, and that he acquired the legal and equitable title by the subsequent deed of Barnawell and wife to him, that Lewis' subsequent vendees and his successors in title acquired Lewis' title which was superior to the Loggins title. Upon this hypothesis he held that the title was in the complainants and they were entitled to recover the possession of the land.

The court thinks this an erroneous conclusion. The legal title was conveyed by Barnawell and wife to Carter as trustee to secure the purchase money. Carter held the legal title, the mortgagor the equity or right of redemption, and the mortgagee held only the lien to secure his indebtedness, which possesses not the dignity of an interest in land requiring a formal deed for transmission of title.

"The mortgagee is considered as a creditor, not owner, and the only interest he has in the land, consists in a lien or security for the payment of his debt. It is a mere chattel interest." Reid v. Bank, 1 Sneed, 262, 274; Kingsport Brake Corporation v. Bostwick, 145 Tenn., 19, 41, 235 S. W., 70; Lieberman, Loveman & Cohn v. Knight, 153 Tenn., 268, 280, 283 S. W., 450.

The trustee holds the legal title in trust, and when the trust becomes inactive, or as is designated "a dry trust," equity which administers trust, treats the legal title as vested in the beneficial owner, so when the mortgagee acquires the equity of redemption from the mortgagor, equity merges the legal and beneficial title, applying the principle of the statute of uses, provided independent equities have not intervened. Tramell v. Tramell, 162 Tenn., 1, 32 S. W. (2d), 1025, 35 S. W. (2d), 574; Temple v. Ferguson, 110 Tenn., 84, 72 S. W., 455, 100 Am. St. Rep., 791.

Under this doctrine the evolution of the legal title goes to the beneficial holder; if the beneficial holder had parted with any part of his beneficial interest prior to acquiring the beneficial interest from the mortgagor through his chain of title, then only such legal title would pass out of the trustee and into the beneficial owner as measured by his real beneficial interest. If he acquired his beneficial interest from the mortgagor, he takes only the interest that the mortgagor had to convey and he is not entitled in equity to require the trustee to convey him the entire legal title, since the mortgagor had parted with a part of his equity to a third person by deed regularly executed and recorded. The grantee in the deed conveying the 4½ acres had acquired the mortgagor's beneficial interest in this par-

ticular tract of land, and the law will carry the title to this tract into this grantee.

Suppose this 131-acre tract of land was worth $10,000 (there is no proof in the record as to its real value), and there was a trust deed resting upon it to secure the note of $5,000, and since the execution of the trust deed the mortgagor had given a second mortgage, or released his equity to a part of the land to a third person. Could the first mortgagee cut off the latter conveyances and defeat the claims arising thereunder by taking a deed directly from the mortgagor for the recited consideration of the obligation secured by the first trust deed? This question is so elementary it needs no answer. In ejectment the complainant must make out a perfect title, and so long as it is not established that the security will consume the entire value of the property secured, the law will not cast the legal title out of the trustee and into the mortgagee who has acquired the equity from the mortgagor. Until the value of the security is shown, his title is imperfect. And in this case the mortgagor had attempted to convey to the mortgagee an equity that he did not own, and the mortgagee knew he did not own. This deed from the mortgagor to the mortgagee being in law insufficient to convey title to the 4½ acres, the mortgagee never acquired title to the 4½ acres and had nothing to pass to his subsequent grantees.

Complainants' title is defective, but it may be insisted that they have a right to rely upon recorded notice and that they could acquire a sufficient title to support their claim by establishing that they were innocent purchasers for value and without notice. They are chargeable with notice of what appears within their chain of title. In the case of Teague v. Sowder, 121 Tenn., 132, 150, 114 S. W., 484, 489, the court quoted 2 Delin on Deeds, section 100, as follows:

"It is a familiar principle that every person taking the deeds is fixed with notice of all recitals contained in the instruments making his chain of title. The principle of equity is well established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination of the deed or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted. If there is sufficient contained in any deed or record, which a prudent person ought to examine, to produce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the facts so contained."

This case holds that a party is chargeable with a clerical error appearing within a deed in a chain of title.

The complaints claimed through the mortgagee Lewis, and Lewis claims through the mortgagor Barnawell, but Barnawell had parted with a part of his title, that is, 4½ acres of his title, before his con-

veyance to Lewis, which was a recorded instrument and directly within the chain of title of Lewis who purchased through the mortgagor.

It may be argued that the title examiner discovering the mortgage securing Lewis' indebtedness, and it not being released by marginal release, he was justified in passing around the conveyance to Loggins of the 4½ acres. We doubt the soundness of this position, for a second mortgagee could not be protected by the registration of his mortgage. The marginal release is not the only method for the release of liens, and it is not sufficient for a title examiner to stop when he finds a mortgage or trust deed unreleased upon the margin for Code 1932, section 8084, provides:

"The above provisions shall not be construed to preclude the right of release by way of deed of release or quit claim."

This provision makes it necessary for title examiners to search the record for deeds of release or quitclaim when the liens are unreleased upon the margin. Therefore, the Loggins deed was in the chain of title, and its contents brought home notice to subsequent purchasers, sufficient to put them upon notice.

There is a line of cases holding that in order for a grantor to convey an estate in land it is necessary that he be named in the body of the conveyance. Berrigan v. Fleming, 2 Lea (70 Tenn.), 271, 273; Daly v. Willis, 5 Lea (73 Tenn.), 100, 102. These cases were dealing with an attempt by a married woman to convey her interest in land by merely signing the instrument following the name of her grantor husband. In the case of Insurance Company v. Waller, 116 Tenn., 1, at page 10, 95 S. W., 811, 115 Am. St. Rep., 763, 7 Ann. Cas., 1078, the court held the plural pronoun "we" sufficient to charge the wife who had signed following her husband, but whose name did not appear in the body of the deed, the conveying clause naming the husband and his heirs and assigns. In the instrument before us Lewis was designated in the separate acknowledgment as "the bargainor," and if this reference were not sufficient to convey away his legal interest (assuming that he had a legal interest in the land), it was sufficient to put an inquiring and prudent man upon notice to determine why he had joined in that deed.

In discussing the question of the failure to name a grantor in the body of the deed, the courts say that the method of conveying legal title is technical, and that the person who joins in the instrument only certifies that the grantors have conveyed the estate they owned. The Loggins deed is a warranty deed asserting that the grantors owned the legal title, and also covenants that there are no encumbrances against the title. Lewis certified to these declarations. And by doing so he charged his successors in title with sufficient notice to put them on guard to protect their rights.

But these cases are further distinguishable for the reason

that the mortgagee has no interest or title in land to convey, and that his interest was only a lien to secure a debt, and is in "the nature of a chattel interest." It does not require formality to pass a chattel interest as it does to pass legal title to real estate; in fact, it is held that a release of a lien by parol is good between the parties. 65 C. J., p. 361. And the joining of the lienholder in an instrument of release is sufficient to put a subsequent purchaser on notice of an agreement of release. It has been held that the absence of a wife's name in a deed signed by her nevertheless conveys her homestead. Kelton v. Brown (Tenn. Ch. App.), 39 S. W., 541.

"Under a statute providing that a mortgage may be discharged by a deed of release duly acknowledged and recorded, the mortgage may be discharged by a conveyance of the mortgaged premises in which the mortgagee joins for the purpose of discharging the mortgage, although the mortgagee's name is not in the granting clause." 41 C. J., page 803; Allen v. Leominster Savings Bank, 134 Mass., 580.

The court is of the opinion that the complainants have failed to show a perfect title in themselves, and for this reason they cannot maintain an action of ejectment. The decree of the chancellor must be reversed and the suit dismissed with costs.

Ailor and McAmis, JJ., concur.